Dobbins v. Oberman.

THOMAS DOBBINS, APPELLANT, V. FRANK H. OBERMAN ET AL., APPELLEES.

1. **Negotiable Instruments.** A note in the following form: "October 4, 1882. On March 1, 1883, for value received, I promise to pay Anna M. Wilson or order four hundred dollars, with interest from this date. This note shall become due immediately upon Anna M. Wilson delivering possession to me of the north-west quarter of section 12, town 6, range 6 E., in Gage county, Nebraska." Signed. *Held,* To be negotiable.

2. ——: BONA FIDE PURCHASER. A holder of negotiable paper who takes it before maturity for a valuable consideration, in the usual course of trade, without knowledge of facts which impeach its validity between antecedent parties, holds it by a good title. *Johnson v. Way,* 27 O. S., 374.

3. ——: ——: EVIDENCE. To defeat a recovery thereon it is not sufficient to show that he took it under circumstances which ought to excite suspicion in the mind of a prudent man. *Id.*

4. ——: ——: ——. To have that effect it must be shown that he took the paper under circumstances showing bad faith or want of honesty on his part. *Id.*

5. ——: ——: ——. Circumstances tending to show bad faith or fraud in taking such paper are admissible in evidence, and the establishment of such bad faith or fraud, whether by direct or circumstantial evidence, subjects the holder of paper so taken to defenses existing between antecedent parties. *Id.*

APPEAL from Gage county district court. Heard below before BROADY, J., on report taken by S. J. Tuttle, referee.

*Lamb, Ricketts & Wilson* and *Novia Z. Snell,* for appellant.

*James E. Philpott,* for appellees.

COBB, CH. J.

This action was brought in the court below by Thomas Dobbins, plaintiff, against Frank H. Oberman and wife

defendants, for the purpose of foreclosing a mortgage on real estate.   Hoagland Brothers and The Chicago Lumber Company were also made defendants, as the holders of liens on the said real estate.   The defendant, Frank H. Oberman, purchased the tract of land in question from one Anna M. Wilson, receiving from her and W. F. Wilson, her husband, a warranty deed therefor, and paying her part cash and giving her the note and mortgage involved in this suit for four hundred dollars, the balance of such purchase price.   This transaction took place on the fourth day of October, 1882.   The following is a copy of the note:

"LINCOLN, NEBRASKA, October 4, 1882.

"On March 1, 1883, for value received, I promise to pay to Anna M. Wilson, or order, four hundred dollars with seven per cent interest from this date.   This note shall become due immediately upon Anna M. Wilson delivering possession to me of the north-west quarter of section 12, town 6, range 6 E., in Gage county, Nebraska.

"F. H. OBERMAN.

This note was, on the ninth day of October, 1882, as appears by endorsement thereon, endorsed by Anna M. Wilson to the plaintiff.

The cause was tried to the court, who found for the defendant and dismissed the action at the cost of the plaintiff, who brings the cause to this court on appeal.

The contention in this court is between the plaintiff and the defendant Oberman, the latter contending that the former cannot maintain his action against him, for the reason that at the time of the sale and conveyance to him of the premises, his co-defendants, Hoagland Brothers and the Chicago Lumber Company, each held judgments against W. F. Wilson, amounting in the aggregate to more than the amount of his note and mortgage, and that suits in the nature of creditor's bills were then pending against said Anna M. Wilson and W. F. Wilson, in the proper court,

for the purpose of having said judgments declared to be liens upon said land, which said suits have since ripened into a judgment or judgments and been declared a lien or liens on the said lands.    Had the action been brought by Anna M. Wilson as the payee of the said note, it cannot be doubted that the above defense would be good.    So also if the note is held to be in form non-negotiable, or was not endorsed to the plaintiff before maturity for a valuable consideration, in the usual course of trade, and without knowledge of the foregoing facts, which it is assumed would impeach its validity as between the maker and payee.

It is not urged by the appellee in this court that the note is not negotiable in form.    But it having been urged in the court below, and a considerable part of appellant's brief being devoted to that point, it is but fair to say that the note, as to form, no doubt complies with all the essential requisites of a negotiable promissory note.    "An open promise in writing by one person to pay another person therein named, or to his order or to bearer, a specified sum of money absolutely and at all events."    1 Dan. Neg. Ins., § 28.    It matters not, then, that it also contains a promise to pay sooner than the general date of payment upon the happening of an uncertain event.

It is evident that the note was endorsed before the first day of March, 1883, the general day of payment, and there being no evidence of the delivery of the possession of the land in question to the defendant, so as to render the note due by the terms of the special provision, it cannot be contended that the note was past due or dishonored when endorsed to the plaintiff.

It is evident, therefore, that the learned court which rendered the finding and judgment against the plaintiff must have believed from the evidence that the note was not received by him in the usual course of trade for a valuable consideration, paid *bona fide*, and without notice of

the antecedent facts which would amount to a defense as between the original parties.

The rule of law applicable to this case is assumed to be correctly laid down in the cases cited by counsel for appellant. "To defeat his recovery thereon it is not sufficient to show that he took it under circumstances which ought to excite suspicion in the mind of a prudent man. To have that effect it must be shown that he took the paper under circumstances showing bad faith or want of honesty on his part." *Johnson v. Way*, 27 O. S., 374.

It should be borne in mind that the appellee does not place his defense on the ground of *gross negligence*, but upon the ground of *mala fides*. In his answer he alleges that the plaintiff, "with the said Anna M. Wilson and her son Frank Wilson, and said W. F. Wilson, have conspired together fraudulently and deceitfully to cheat and defraud the said Oberman," etc. So that the defendant must fail in his defense unless there was evidence to sustain a finding by the trial court that the plaintiff knew the facts upon which the defense is founded at or before the time of the endorsement to him of the note.

The evidence on this point is chiefly circumstantial. But this is no objection if it is sufficiently convincing. In the case of *Johnson v. Way, supra*, the court, in the opinion, say: "Circumstances tending to show bad faith or fraud in taking such paper, though not conclusive in themselves are admissible in evidence; and the establishment of such bad faith or fraud, whether by direct or circumstantial evidence, subjects the holder of paper so taken to defenses existing between antecedent parties."

Anna M. Wilson was, throughout the transaction of selling the land in question and taking the note and mortgage to secure the sum of four hundred dollars, part of the purchase money therefor, represented by her son, Frank Wilson, who was her agent for that purpose.

It appears from the evidence offered by both parties that

Dobbins v. Oberman.

this man Frank Wilson and the plaintiff were, at the date of this transaction, partners, carrying on a second-hand store in the city of Lincoln, and were both personally engaged in tending the said store; and it appears from testimony offered on the part of the defendant that the said negotiation and trade between the defendant and the said Frank Wilson, as agent for said Anna M. Wilson, was in part had and made by and between the defendant and the said agent, Frank Wilson, at the said store.

Colonel J. E. Philpott testified on the part of the defendant that on the seventh day of October, in the afternoon, after the completion of the trade, the passing of the deed between the parties, and the delivery of the note and mortgage by the defendant to the said Anna M. Wilson, and after the defendant had discovered the pendency of the suits of Hoagland Brothers and the Chicago Lumber Company against W. F. Wilson and Anna M. Wilson for the purpose of establishing their several liens upon the said land, he, the witness, L. W. Billingsley, and Dr. Shaw, on the part of the defendant, went to the said store of Frank Wilson and plaintiff, and witness, as spokesman of the party, enquired for Frank Wilson, and he being pointed out to him by defendant, that the witness, being some ten or twelve feet from said Frank Wilson and about the same distance from the plaintiff, asked said Frank Wilson if he was the son of Anna M. Wilson, and the person who transacted the business in reference to the land in controversy for her. That Wilson replied in the presence of plaintiff, who was standing behind the counter ten to twelve feet distant from witness and Frank Wilson, the two latter being in front of the counter, and witness nearer to the plaintiff than Wilson, Wilson replied, "I am the party who transacted the business;" and while the parties were all sustaining the same relative position towards each other witness said to Frank Wilson, "I appear as the attorney of Mr. Oberman who bought some land from your mother

through you, and he is just informed that there is a suit pending against it for four hundred dollars or more." Wilson said, "I am busy now, and haven't time to attend to it now." Witness said, "Then I will wait on you for a time." That Wilson, who was waiting on some customers, stepped out upon the sidewalk with the customers. After waiting for some minutes witness went out also and renewed the conversation, and during that conversation plaintiff, in the witness's words, "again appeared, and what he heard I do not know."

The defendant, Frank H. Oberman, was sworn as a witness on his own behalf; but although he was present at the above interview with Frank Wilson, and testifies in relation to it, he states nothing which tends to prove knowledge on the part of plaintiff of the alleged defense to the said note and mortgage. Nor is there any evidence in the case other than the above testimony of Col. Philpott tending to prove such knowledge.

On the other hand, the plaintiff, who was sworn as a witness on his own behalf, testified that he first saw the note and mortgage on the ninth day of October, 1882, in the second-hand store No. 138 South Tenth st., Lincoln, that he bought them and they were handed him by Miss Wilson. Witness continued: "Frank Wilson told me his mother had a note and mortgage for $400 which she wanted to sell, secured on real estate. I told him I would buy it if I could get it right. He told me it was drawing seven per cent interest, and she would make a discount of five per cent, and said he would see his mother. This conversation took place on Saturday. He said he would send the papers up with one of her daughters on Monday following; that she would take the $380. Monday afternoon witness Alva Wilson came up with the papers. It was 3:30 or 4 o'clock in the afternoon. I looked over the papers and saw they were right, the note and mortgage and the order." An order signed by Anna M. Wilson on defendant to pay

the bearer $380 for the papers. "I went to the safe, opened my drawer and took out the money. Part of this money was my own, no part belonged to the parties. Some belonged to a young man named Chas. I. Dobbins, working on the railroad; part to a young man named Butts; I think $20 belonged to ————. I held all this money in trust. I thought I would invest it, and in March get it back. * * * The negotiation for this note and mortgage commenced on Saturday before the ninth of October, 1882." Witness continues at considerable length to state how he paid the money for said note and mortgage, and called a witness to see him pay it because he doubted Miss Wilson, the person to whom he was paying it, "being of age." In answer to the question, "What knowledge, if any, had you at this time of any suit or suits having been brought or then pending concerning the land covered by this mortgage" Witness answered, "I had no such knowledge." And to the question, "What knowledge, if any, had you at this time of any claim of the defendants, Hoagland Brothers and the Chicago Lumber Company, against the land covered by this mortgage?" he answered, "I had no such knowledge." Also to the question, "What knowledge had you of any of the transactions between Hoagland Brothers and the Chicago Lumber Company and Wilson, or between Mrs. Wilson and Oberman?" he answered, "I had no knowledge."

The foregoing is all the evidence in the case which sheds any light on the question of the good faith, or otherwise, with which plaintiff purchased the note and mortgage. I should add, however, as counsel seem to place some reliance upon the point, that plaintiff also stated, when giving his testimony, that he was not engaged in buying notes or mortgages or dealing in any kind of securities.

The question is, did the plaintiff receive the note *bona fide*, without knowledge of the facts which it is assumed would constitute a defense to it in the hands of the payee?

If the above testimony is strictly contradictory, then the trial court was obliged to believe that of one of the witnesses and reject that of the other as untrue. But, on the other hand, if the testimony could be reconciled so as to render the whole of it susceptible of belief, then it was clearly the duty of the court sitting as a jury so to do. The witnesses are both credible, and must be believed, if possible.

The testimony of Colonel Philpott, standing alone, is sufficient to raise a fair presumption that the plaintiff had notice of the facts relied upon as a defense. Yet it is to be regretted that it was not fuller than it was. The witness, the plaintiff, and Frank Wilson, all being in the store and within ten or twelve feet of each other, if there was no crowd of other persons in the store, or confusion of any kind, and witness and Wilson conversed in their usual tone of voice, and the attention of plaintiff was not engrossed by other matters, then it is incredible that he did not hear the conversation, and if he did hear it he must have understood the facts, so as to render it impossible for him the same evening to enter upon a negotiation for the purchase of the note from Anna M. Wilson in good faith. It seems to me that witness might have disposed of these difficulties in his testimony, unless there was some inherent difficulty in the facts. But reading the testimony as it is returned by the referee, and was considered by the trial court, every word of it may be strictly true, and still the plaintiff may not have heard, much less have understood, the conversation between witness and Wilson, and may have remained in utter ignorance of the defense of defendant to the said note.

On the other hand, the testimony of the plaintiff, while chiefly negative in its character, and hence the weakest species of evidence, yet if it be believed is entirely inconsistent with his having had such knowledge of the facts in the case as forbid his purchasing the note in entire good faith.

The above considerations lead to the conclusion that the judgment of the court below cannot be sustained. Although not the usual course, and a practice which will not usually be pursued, yet owing to the peculiar manner in which this cause was tried in the court below, the cause is remanded to the district court for a new trial. The costs, except those in this court, to abide the result.

JUDGMENT ACCORDINGLY.

THE other judges concur.