## Richmond.

## CORBIN v. PLANTERS NATIONAL BANK.

April 16th, 1891.

1. DISCONTINUANCE—*Code, § 3396, construed.*—The discontinuance provided for by this section is a discontinuance as against any one or more defendants upon whom process has not been served.

2. INLAND BILLS—*Proof of dishonor.*—The rule that protest of foreign bills of exchange is ordinarily indispensable, and that the notarial certificate is *prima facie* evidence of presentment, and non acceptance or non-payment, does not apply to promissory notes and inland bills. As to these there must be proof *aliunde* of presentment and dishonor.

3. LEX LOCI CONTRACTUS—*Lex fori.*—The former determines whether or not an instrument is negotiable. The latter determines what is evidence of presentment and dishonor.

4. PROMISSORY NOTES—*Code, §§ 2849, 2850.*—Inland bills payable outside this State and promissory notes are not protestable under these sections, and the notarial certificate is not evidence of their dishonor.

5. NOTICE OF DISHONOR—*Burden of proof.*—It is settled that, ordinarily, where the parties reside at different places, notice of dishonor should be forwarded the day after dishonor, if practicable, at the latest. And each successive party receiving the notice is entitled to a full day to transmit it to any party that is answerable over to him upon payment of the bill or note. Plaintiff must strictly prove such notice as a condition precedent to recovery.

Error to judgment of corporation court of Danville, in an action wherein the Planters National Bank of Richmond was plaintiff, and T. J. Corbin was defendant.

On the 13th of July, 1887, one S. F. Cobbs, in the city of New York, executed his promissory note for $3,000, payable ninety days after date, to his own order, at his office, 48 Broad street, in that city. It was admitted that by the laws of New York this note was negotiable. It did not appear, however, that by those laws it was protestable. After being indorsed by Cobb, Corbin, and one T. S. Flournoy, Jr., it was discounted for the latter by the Planters Bank two days after its date, and the proceeds put to his credit in the bank.

The note was not paid at maturity, and was protested by a New York notary, whose certificate of protest was the only evidence of the dishonor of the note offered by the plaintiff.

On the 25th of February, 1888, the bank instituted a joint action of debt in the said corporation court against the maker and indorsers of the note, in which action process was duly served on all the defendants. The defendants, Corbin and Flournoy, at the April term of the court, 1888, demurred to the declaration and also pleaded *nil debet;* whereupon the court overruled the demurrer and continued the cause to the following June term. In the meantime, to-wit: on the 26th of May, the defendant, Flournoy, confessed a judgment in the clerk's office, in the same action, for the debt claimed in the declaration, and costs. And at the following July term there was a judgment by default against Cobbs and a discontinuance as to Corbin.

Afterwards the present action was instituted against Corbin alone. The declaration contains the various common counts, and also a count upon the above-mentioned note, and alleges the insolvency of Cobbs and Flournoy. The defendant pleaded *non assumpsit* and a special plea of "former adjudication," setting up, in a rather informal manner, the defence that the cause of action asserted in the declaration was merged in the judgments above-mentioned. And at the April term, 1889, neither party requiring a jury, the court gave judgment

for the plaintiff for $3,001.41, with interest thereon from the
14th of October, 1887, and costs, which is the judgment com-
plained of.

*B. Green*, and *Christian & Christian*, for the plaintiff in error.

*Berkeley & Harrison*, for the defendant in error.

LEWIS, P. (after stating the case), delivered the opinion of
the court.

The case presents several important questions of law, but
their solution is free from difficulty.

The defendant, in support of the special plea, relies upon
*Beazley* v. *Simms*, 81 Va., 644.   But that case is not in point.
The rule, moreover, announced in that case has been changed
by the new Code.     That was an action against two joint
obligors, in which process was served on one of the defendants
only, and there was a judgment against that one, and a dis-
continuance as to the other.    And in a subsequent action
against both, it was held that the cause of action was merged
in the judgment recovered in the first suit.    Afterwards, how-
ever, the present Code was adopted, section 3396 of which,
after providing that where, in any action against two or more
defendants, the process is served on *part of them*, the plaintiff
may proceed to judgment as to any so served, and either dis-
continue it as to the others, or from time to time, as the process
is served as to such others, proceed to judgment as to them
until judgments be obtained against all, goes on further to
enact that "*such* discontinuance of the action as to any defen-
dant shall not operate as a bar of any subsequent action
which may be brought against him for the same cause."

It is obvious that the discontinuance provided for by this
statute is a discontinuance as to any one or more defendants
upon whom process has *not* been served, whereas here process

in the first action was served on all the defendants, so that the case is not within the statute. It may be conceded, however, that the principle recognized in *Beazley* v. *Simms* would control this case if the first action could have been rightly maintained in this State against all the defendants. But clearly it could not, for their liability was not joint, but several, and the note sued on was not "payable at a particular bank, or at a particular office thereof for discount and deposit, or the place of business of a savings institution or savings bank, or at the place of business of a licensed banker or broker." Code, sec. 2853.

This being so, the next question is, whether upon the evidence, which is set out in the bill of exceptions, the bank was entitled to recover in the present action, and we are of opinion that it was not.

In the first place, there was no proof of the dishonor of the note. By the law merchant, which is a part of the common law, protest of a dishonored foreign bill of exchange is ordinarily indispensable, and the notary's certificate of protest proves itself; that is, it is *prima facie* evidence of presentment and non-acceptance, or non-payment. But the rule does not extend to promissory notes and inland bills. As to these, the protest is not regarded as an official act, and accordingly, in the absence of statute, is not receivable as evidence of dishonor. 2 Dan'l Neg. Instrs., sec. 928; *Young* v. *Bryan*, 6 Wheat., 146; *Union Bank* v. *Hyde, Ibid,* 572; *Nickolls* v. *Webb, Id.,* 326; *Dunn* v. *Adams,* 1 Ala., 527; Story Prom. Notes, sec. 297. And where a State statute makes the certificate of protest, when executed by a notary of that State, evidence of dishonor in such cases, it does not authorize the notary to act beyond its territorial limits, or accord the same effect to his act when beyond them. 2 Dan'l Neg. Instrs., sec. 959; 96 Am. Dec., 608, note to *Tate* v. *Sullivan.*

Parsons states the common law rule as follows: "In the case of foreign bills protested in a country other than that in which

the suit is brought," he says, "full faith and credit are given to the instrument of protest; and the original, or a duly certified copy, are admissible in evidence of the acts therein stated, so far as those acts are within the scope of a notary's official duty. In the case of inland bills, and even foreign bills which are protested in the country where suit is brought, the protest is not admissible in evidence, unless the notary has deceased since the protest was made." 1 Pars. Notes and Bills, p. 635.

The whole subject, however, as he goes on to say, is very generally regulated in this country by statute, and so it is in Virginia. The question, therefore, as to the effect of the certificate of the New York notary, which was the only evidence offered in the present case as to the dishonor of the note sued on, must be determined in accordance with the statute law of this State; for it is conceded that as to this matter the *lex fori* governs.

It is contended by the defendant, the plaintiff in error here, that the court below erred in treating the note sued on as negotiable. But we do not concur in this view. It is a general rule that every contract as to its validity, nature, interpretation and effect, is governed by the law of the place where it is made, unless it is to be performed in another place. Accordingly, it was decided in *Freeman's Bank* v. *Ruckman*, 16 Gratt., 126, that whether a note is negotiable or not is a question which relates to its nature and effect, and is, therefore, to be governed by the *lex loci contractus*, although the remedy is governed by the place where the suit is instituted. Hence, the note sued on in the present case, having been executed and made payable in New York, where, it is conceded, it was negotiable, it was properly so treated by the court below.

But, as already stated, the only evidence of its dishonor was the certificate of the New York notary, and that, according to the statute of this state, was not evidence for the purpose for

which it was offered. The note was payable, not in this State, but in New York, and is, therefore, not within our statute permitting the protest of promissory notes and inland bills, which applies only to such notes as are *payable in this State*, at a particular bank, or at a particular office thereof for discount and deposit, &c., and as to which the protest is made *prima facie* evidence of what is stated therein. Code, secs. 2849, 2850; *McVeigh* v. *Bank of Old Dominion*, 26 Gratt., 785, 829.

The legislature has not seen fit to make the notarial certificate of protest of a promissory note, or of an inland bill, payable outside of the State, admissible in evidence in our courts as an official act, and we have not the power, even if we were so disposed, to give to it an effect not sanctioned either by the common law or by the statute. Besides, there is no proof that the note sued on was a protestable security by the laws of New York, and, in the absence of any such proof, the presumption is that it was not. *Dunn* v. *Adams*, 1 Ala., 527; S. C., 35 Am. Dec., 42.

There is no proof, moreover, of due notice to the defendant of the dishonor of the note. Although there has been a diversity of opinion among judges as to what is reasonable time within which notice must be given by the holder to his indorser, it is settled that where the parties reside at different places, and notice is sent by mail, it should be mailed in time to be sent the next business day after dishonor, if practicable, at the latest. "Where the notice is sent by post," says Greenleaf, "it need not be sent on the day of dishonor, but it should go by the next practicable post after that day, having due reference to all the circumstances of the case" Notice may also be sent by a special messenger, and it will be sufficient if it reaches the party on the same day that it would have reached him in due course of mail. 2 Greenl. Ev., sec. 187; 1 Pars. Notes & Bills, p. 511; 2 Danl. Neg. Instrs., secs. 1039, 1043, 1033.

And the general rule is that each successive party who receives notice of dishonor is entitled to a full day to transmit it to any antecedent party who is chargeable over to him upon payment of the bill or note. 2 Danl. Neg. Instrs., sec. 1044.

In the case at bar the only evidence, on the point of notice is that of Quarles, cashier of the bank, who testifies that notices of protest were received by him from New York on Monday, October 17th, 1887, and that on the same day he mailed a copy to the defendant at Danville. The note matured on Friday, the 14th of October, and there is no evidence whatever either as to the time when the notices were mailed in New York, or as to the usual course of the mail between that city and Richmond. For aught the record shows, the notices may have been mailed on Sunday, the 16th, or on Monday, the 17th, and if not mailed before that time, it was too late to avail.

The rule is well expressed by Parsons, who says that " the burden of proving due notice is upon the plaintiff, whose duty it is to give it in a way capable of proof. It should also be proved distinctly. Thus, if the witness says the notice was sent in two or three days, and two are enough, but three not, and there is nothing to define this testimony, it will not be sufficient evidence to find a verdict for the plaintiff." 1 Pars. Notes and Bills, p. 516. And in *Friend* v. *Wilkinson*, 9 Gratt., 31, it was decided that not only is the burden of proving notice on the plaintiff, but that where notice is required, it is a condition precedent to a recovery, and that he must show a strict compliance with the rule. Hence, it was held incumbent on the plaintiff in that case to show that notice of protest was duly placed in the post-office to be mailed, and this not having been done, and there being no proof that the defendant duly received notice, the judgment of the lower court in favor of the plaintiff was reversed.

The application of these elementary principles to the present case shows very clearly, we think, that the judgment here complained of must be reversed, and a judgment entered for the defendant.

JUDGMENT REVERSED.