Argued June 6, affirmed July 29, 1919, rehearing denied January 13, 1920.

## NICKELL v. BRADSHAW.*

(183 Pac. 12.)

**Pleading—Cure of Defect by Subsequent Pleading.**

1. Where complaint correctly set forth note sued upon, except that it omitted one phrase, but answer set forth note correctly and reply admitted such portion of answer, *held*, that pleadings, construed together, referred to note introduced in evidence.

---

*For a discussion of the question as to provision accelerating maturity as affecting negotiability of bill or note, see notes in 35 L. R. A. (N. S.) 390; L. R. A. 1915B, 472.          Reporter.

**Bills and Notes—Presentment—Sufficiency of Evidence.**

2.  Conflicting evidence *held* to make a jury question whether note sued upon was in a bank's possession for presentment on day note fell due, as required by Section 5904, L. O. L., or in plaintiff's lock box in bank.

**Bills and Notes—Presentment—Sufficiency.**

3.  Under Sections 5905, 5920, L. O. L., relating to presentment of negotiable instruments for payment, a note payable at a bank is sufficiently presented if it is in bank at date of maturity ready to be delivered by bank to the proper person upon payment being made.

**Bills and Notes—Payment—Authority.**

4.  Possession at time and place of payment of a note properly indorsed is *prima facie* evidence of authority to receive payment.

**Bills and Notes—Negotiability—Time for Payment.**

5.  Under Sections 5834, 5837, L. O. L., defining negotiable instruments, etc., a note payable five years from date and containing the clause, "due if ranch is sold or mortgaged," is not rendered non-negotiable by quoted words.

**Bills and Notes—Time for Payment—Construction.**

6.  Where a note payable five years from date contains the clause, "due if ranch is sold or mortgaged," the quoted clause is not self-executing, but merely confers option upon holder to treat debt as due if contingency occurs.

**Bills and Notes—Complaint—Time for Payment.**

7.  Where a note payable five years after date contained a clause making it due if the maker's ranch was sold or mortgaged, a plaintiff relying upon expiration of five-year period need not allege or prove that ranch had not been sold.

**Evidence—Parol Evidence—Contemporaneous Agreement.**

8.  Parol evidence that indorser and indorsee of a note agreed that indorsee would enforce payment only from maker is incompetent because contradicting the written contract of indorsement.

**Bills and Notes—Burden of Proof—Notice of Dishonor.**

9.  The holder of a note has burden of proving that notice of dishonor was mailed within the time prescribed by Section 5937, L. O. L.

**Bills and Notes—Notice of Dishonor—Sufficiency of Evidence.**

10.  Evidence that written notice of dishonor was postmarked during afternoon of following day does not establish a compliance with Section 5937, L. O. L., requiring deposit in postoffice in time to go by mail on day following day of dishonor, etc., since there is no proof regarding time of outgoing mails.

From Jackson: Frank M. Calkins, Judge.

Department 1.

Belle Nickell brought this action against R. H. Bradshaw, as the maker, and against Effie May Terrill, as an indorser of a promissory note. Bradshaw made no appearance and there was a judgment against him for the amount of the note; but as between Belle Nickell and Effie May Terrill there was an involuntary judgment of nonsuit against Belle Nickell. The plaintiff appealed.

On August 9, 1910, R. H. Bradshaw delivered to Effie May Terrill his promissory note which reads as follows:

"$2000.          Medford, Oregon, Aug. 9th, 1910.

"Five years from date without grace, I promise to pay to the order of Effie May Terrill for value received, with interest from date, payable Annually at the rate of 6 per cent. per annum, until paid, principal and interest payable in U. S. Gold Coin, at Farmers and Fruitgrowers Bank of Medford, Oregon; and in case suit or action is instituted to collect this note or any portion thereof, I promise to pay such additional sum of money as the Court may adjudge reasonable as attorney's fees in such suit or action.

"R. H. BRADSHAW.

"Due if ranch is sold or mortgaged."

Charles Nickell is the husband of Belle Nickell; and Charles E. Terrill is the husband of Effie May Terrill. On March 26, 1912, Belle Nickell traded 160 acres of land, owned by her, for the note held by Effie May Terrill. The land was valued at $1,600 and Belle Nickell and her husband executed and delivered to Effie May Terrill a note "for $400 for the difference." This note signed by the Nickells was afterwards paid by them. All the negotiations for the "trade" were conducted by Charles Nickell as the agent of Belle Nickell and by Charles E. Terrill as the agent of his wife.

The inference to be drawn from the record is that all the negotiations for the "trade" as well as the consummation of it were carried on in Medford. Effie May Terrill resided in Brownsboro, Jackson County, and was not present during any of the negotiations nor at the close of the transaction. When the Bradshaw note was delivered to Charles Nickell, as the agent of his wife, there was an indorsement on the back of the paper showing the payment of interest to August 9, 1911, and immediately beneath that writing the name "Effie May Terrill" was written. The undisputed evidence is that Effie May Terrill placed the note in her lock-box in a Medford bank and that it remained there until it was delivered to Charles Nickell. The uncontradicted testimony of Effie May Terrill is that, although the name upon the back of the note was her genuine signature, she had written her name on the note some time before the negotiations for the "trade."

On July 24, 1915, Charles Nickell and his wife were in Berkeley, California, and on that date the former, writing from Berkeley, addressed a letter to Charles E. Terrill, inquiring as to the whereabouts of Bradshaw and saying that "his note will soon be due." Nickell returned to Medford shortly after writing to Terrill and did not receive an answer from Terrill until after he had returned to Medford. Not knowing the whereabouts of Bradshaw, about ten days or two weeks before August 9, 1915, and while still in Berkeley, Nickell wrote two letters to Bradshaw, addressing one to him at Medford and the other to him at Brownsboro, telling him that "the note would become due on a certain date and to go and pay it." Charles Nickell testified that he did not present the note to Bradshaw personally, but that "I just left it at the bank where he should pay it and told him about it being there." Charles Nickell

stated on direct examination that the note "has been in mine and my wife's possession since it was received from Charles E. Terrill; and upon being recalled the witness was asked by counsel for plaintiff whether he made demand upon Bradshaw for payment the next day after the note became due; and he answered thus:

"Yes, the next day. This note was at the bank [Farmers and Fruitgrowers' Bank] there all of the time and it was only withdrawn sometime afterwards from the bank and in fact he was notified to appear at the bank and pay it."

Charles Nickell was further asked: ·

"You say this note was at the Farmers and Fruitgrowers' Bank up to the time it became due?" and he answered "yes."

On August 10, 1915, Charles Nickell wrote and Belle Nickell signed a letter addressed to Effie May Terrill at Brownsboro, as follows:

"You are hereby notified that the note drawn in your favor by R. H. Bradshaw under date of August 9, 1910, for $2,000.00, payable at the Farmers & Fruitgrowers Bank at Medford, Oregon, five years after date, with interest at 6% per annum, and subsequently indorsed by you and sold and transferred to me by you before maturity for a valuable consideration, was dishonored and not paid by said R. H. Bradshaw, the maker, at maturity, after due presentation.

"I now make demand upon you that you pay said note and accrued interest at the Farmers & Fruitgrowers Bank at Medford, Oregon, at once.

"BELLE NICKELL.
"Dated this 10th day of August, 1915."

This letter was deposited in the postoffice in Medford and was received by Effie May Terrill at Brownsboro.

The complaint alleges that R. H. Bradshaw gave his promissory note to Effie May Terrill on August 9, 1910, and that afterwards, before the maturity of the note, the latter indorsed it to the plaintiff; that "at the maturity thereof" the note was "duly presented to the said defendant, R. H. Bradshaw, the maker thereof for payment and payment thereof demanded; but the same was not paid nor was any portion thereof, of all which due notice was given to the said defendant, Effie May Terrill, the said indorser thereof, and payment thereof demanded of the said defendant, Effie May Terrill, the said indorser." The complaint sets out a purported copy of the note sued upon; but a comparison of the complaint with the promissory note executed by Bradshaw discloses that the recitals in the complaint agree with the original note except that the complaint omits the words "Due if ranch is sold or mortgaged."

Effie May Terrill denied all the allegations of the complaint except as "specifically alleged" in the answer. In passing it is proper to add that the denials were based, in part, on the theory that the complaint recited a note different from the one which the respondent had transferred to the plaintiff. The answer recites the execution and delivery of the note from Bradshaw to Effie May Terrill and this pleading contains an accurate copy of the whole note. The answer also contains two separate defenses. In the first separate defense it is stated, in substance, that the Bradshaw note was delivered to and accepted by the plaintiff upon an agreement by her—

"To look entirely to the defendant Bradshaw for the payment of the same, without any claim upon this defendant for liability for any portion of said note, principal or interest, or attorney's fees. * * That in said transaction plaintiff accepted said note as the obligation of the defendant Bradshaw only, relieving this de-

fendant from any liability thereon in the event of non-payment, and without any other understanding, legal, implied or otherwise that this defendant would become the guarantor or indorser thereof."

In the second separate defense it is recited that when Bradshaw gave the note to Effie May Terrill he was the owner of a ranch in Jackson County,—

"of large acreage and of great value, and so long as said ranch remained the property of the said Bradshaw and was not too largely mortgaged or encumbered said note was easily collectible out of said ranch; that for said reason it was stipulated as a part of said transaction that if said ranch should be sold or mortgaged said note should mature, so that this defendant might protect herself in the collection of said note."

Effie May Terrill further alleged that at the time of the transfer of the note to Belle Nickell the Bradshaw ranch was mortgaged but that the

"encumbrance was small as compared with the value of said ranch and had been put on by the consent of this defendant, as this defendant advised plaintiff at the time of the sale of said note."

The second separate defense concludes with the following paragraph:

"That thereafter on or about the 18th day of January, 1913, the defendant Bradshaw sold said ranch to Frederick T. Lewis, of which fact the plaintiff had knowledge, and on or about the time of said transaction and for more than one year prior to any notice of nonpayment to this defendant and for more than one year prior to any demand upon this defendant for the payment of said note or any part thereof. By the terms of said note and by reason of said transaction the said note, * * became due and owing more than one year prior to any notice of nonpayment or demand for payment by plaintiff on defendant."

The reply opens by explaining that the words "due if ranch is sold or mortgaged" were inadvertently omitted from the complaint. The reply denies that the Bradshaw note was transferred to the plaintiff upon an agreement by her to look to Bradshaw only for payment of the note; and this denial is followed by an affirmative allegation that it was agreed that the "plaintiff should not look entirely to the said defendant R. H. Bradshaw for the payment of the said note * * but that the said defendant Effie May Terrill should indorse the last described note unrestrictedly."

The plaintiff admits the sale to Frederick T. Lewis but attacks the second separate defense by averring that the words "due if ranch is sold or mortgaged" were intended to give Effie May Terrill "the option only to declare the said note due in the event the said defendant Bradshaw should sell or mortgage the ranch referred to in said promissory note"; that Effie May Terrill waived her right to exercise the option to declare the note due by consenting on October 8, 1910, to a conveyance of the north half of the ranch from Bradshaw to Mrs. M. D. Harbaugh for $4,000 and by consenting to the execution of a mortgage in 1911 on the south half of the ranch for $3,120 by Bradshaw to H. M. McFarland.                    AFFIRMED.

For appellants there was a brief over the names of *Mr. James E. Fenton, Mr. W. E. Crews* and *Mr. W. D. Fenton,* with an oral argument by *Mr. W. D. Fenton.*

For respondent there was a brief and an oral argument by *Mr. Alfred E. Reames.*

HARRIS, J.—1. The respondent argues that the note introduced in evidence is not the instrument described in the complaint and upon which the action is

brought. The note recited in the complaint is an exact copy of the instrument received in evidence except that the words "due if ranch is sold or mortgaged" are omitted from the former. The answer denies all the allegations of the complaint but this denial is qualified by the words "except as hereinafter specifically alleged." Immediately following this qualified denial is paragraph one in which it is affirmatively alleged that on August 9, 1910, R. H. Bradshaw made and delivered to Effie May Terrill his promissory note. This allegation is then followed by an exact copy of the note which was introduced in evidence. In the reply the plaintiff expressly admits the allegations in paragraph 1 of the answer and this admission is then followed by an explanation to the effect that through inadvertence the words "due if ranch is sold or mortgaged" were omitted from "the copy of said promissory note as set out in the complaint of plaintiff herein." A mere statement of the facts makes it obvious that the complaint and the reply on the one hand and the answer on the other refer to the same note and that the note referred to is the instrument received in evidence.

2. Assuming that the note became due on August 9, 1915, and not before that date, then in order to make Effie May Terrill liable as an indorser, Belle Nickell, the holder, was obliged to present the note for payment on August 9, 1915, for Section 5904, L. O. L., provides that:

"Where the instrument is not payable on demand, presentment must be made on the day it falls due": 8 C. J. 533, 534, 548, 549.

3, 4. The plaintiff insists that she offered sufficient evidence to warrant a finding that the note was, on August 9, 1915, in the hands of the bank for delivery

to the maker upon payment being made by him.  Effie May Terrill strenuously contends that there is an utter want of evidence to show that the note was in the hands of the bank for collection and that the most that can be claimed for the evidence is that the instrument was in the bank in the plaintiff's lock-box.  It is true that Charles Nickell stated that the note had been "in mine and my wife's possession since it was received from Charles E. Terrill."  The quoted answer of the witness cannot in fairness be construed alone and by itself, but it must be interpreted in connection with the remainder of the testimony given by the witness and when so construed there was sufficient evidence, if believed by the jury, to sustain a finding that the bank had the note in its actual possession on the date when it became due with authority to receive payment and surrender the note to the maker.  The substance of the testimony of Charles Nickell is that he left the note in the bank; that about ten days or two weeks before the note became due he wrote to Bradshaw telling him that the note was in the bank and "to go and pay it."  The jury could have fairly and reasonably construed the words of Nickell to mean that the bank had actual possession of the note with authority to surrender it upon payment.

However, it is argued that even though it is held that the bank had possession of the note with authority to surrender it upon payment being made, nevertheless no presentment for payment was made.  This argument is based upon the language of Section 5905, L. O. L., where it is said:

"Presentment for payment, to be sufficient, must be made * * to the person primarily liable on the instrument, or, if he is absent or inaccessible, to any person found at the place where the presentment is made."

If Belle Nickell had retained actual possession of the note and if she had gone to the bank with it on August 9, 1915, for the purpose of presenting it, then, if Bradshaw was not present, she would have been obliged to have presented the note to some person at the bank for payment. But it must be remembered that the note was payable at the Farmers and Fruitgrowers' Bank of Medford and there was evidence to show that the instrument was in the hands of the bank for collection; and consequently it would have been an idle, empty and vain ceremony if some person connected with the bank had presented the note for payment to some other person connected with the bank when the person making presentment had as much authority as an agent of the bank to pay the note as the person to whom presentment was made. The negotiable instruments law (Sections 5905 and 5920, L. O. L.) simply redeclares the rule, which generally prevailed prior to the adoption of the statute, that when a note is made payable at a bank, a sufficient presentment occurs if the instrument is actually in the bank at maturity, ready to be delivered by the bank to any person who is entitled to it upon payment: *De La Vergne* v. *Globe Printing Co.*, 27 Colo. App. 308 (148 Pac. 923, 924); *Stewart* v. *Soenksen,* 173 Ill. App. 1, 3; *Kewanee National Bank* v. *Ladd,* 175 Ill. App. 151, 155; *Norwood National Bank* v. *Piedmont Publishing Co.,* 106 S. C. 472, 478 (91 S. E. 866); *Doherty* v. *First National Bank of Louisville,* 170 Ky. 810, 813 (186 S. W. 937); Crawford's Ann. Neg. Inst. Law (1916 ed.), 150; Eaton & Gilbert on Com. Paper, 452, 549; 3 R. C. L. 1206. See also: *Nelson* v. *Grondahl,* 13 N. D. 363 (100 N. W. 1093); Eaton & Gilbert on Com. Paper, 449; *Havlin* v. *Continental National Bank,* 253 Mo. 292, 301 (161 S. W. 741); 8 C. J. 558.

Section 5905, L. O. L., declares that presentment "must be made by the holder, or by some person authorized to receive payment on his behalf"; and the defendant contends that even though it be assumed that the note was in the actual possession of the bank, yet there was no evidence that any officer of the bank had authority to receive payment. In addition to the testimony of Charles Nickell there is the circumstance of the signature of the defendant on the back of the note. Possession at the time and place of payment, when indorsed as this note was, is *prima facie* evidence of authority to receive payment: 8 C. J. 565; Selover on Neg. Inst. (2 ed.), 246.

5. It is contended that the note sued upon is a nonnegotiable instrument. This contention proceeds upon the theory that the words "due if ranch is sold or mortgaged" made the time of payment so uncertain that it cannot be said that the note was payable "at a fixed or determinable future time." Section 6017, L. O. L., defines a negotiable promissory note as "an unconditional promise in writing made by one person to another, signed by the maker, engaging to pay on demand or at a fixed or determinable future time, a sum certain in money to order or to bearer." Speaking of instruments generally, Section 5834, L. O. L., declares that an instrument to be negotiable must, among other things, "be payable on demand, or at a fixed or determinable future time." The meaning of "fixed future time" is expressed in Section 5837, L. O. L., thus:

"An instrument is payable at a determinable future time, within the meaning of this act, which is expressed to be payable (1) at a fixed period after date or sight; or, (2) on or before a fixed or determinable future time specified therein; or, (3) on or at a fixed period after the occurrence of a specified event, which is certain to happen, though the time of happening be uncertain.

An instrument payable upon a contingency is not negotiable, and the happening of the event does not cure the defect."

The three sections of our Code to which attention has been directed correspond with Sections 184, 1 and 4 of the uniform negotiable instruments law which has been adopted by all the states of the Union except Georgia and Texas: *Utah State Nat. Bank* v. *Smith* (Cal.), 179 Pac. 160, 161. The chief object of the uniform negotiable instruments law was, as its name implies, to accomplish uniformity, so that a citizen of one state could know the law of every state by acquiring a knowledge of the law of his own state. Although in some of the states slight differences in phraseology may occasionally be observed, or sometimes, but rarely, omissions may be noted, or a small number of material changes might be specified, yet for the most part not only the subject matter but also the phraseology and the sections of the original draft are exactly the same in the states which have adopted the uniform negotiable instruments law. In the main, the uniform negotiable instruments law is only a legislative declaration of the rules of the law-merchant; and, indeed, the concluding section of the statute provides that:

"In any case not provided for in this act the rules of the law merchant shall govern": Section 6025, L. O. L.

While most of the rules of the law-merchant were thoroughly established and were the same in all American jurisdictions, still the subject of negotiable instruments presented many phases upon which appellate courts differed; and generally, but not always, the uniform negotiable instruments law solved these differences by adopting whatever rule was supported by the weight of authority; and hence it is accurate to say

that the uniform negotiable instruments law for the most part redeclares all the uniformly accepted rules of the law-merchant and, in most instances where there was a difference of judicial opinion, adopts whatever rule was supported by the weight of authority: 8 C. J. 47. Legislation has succeeded in establishing a substantially uniform code of rules governing negotiable instruments. Uniformity in legislation upon the subject of negotiable instruments may be said to be an accomplished fact, but perfect and exact uniformity in the construction and application of all those same rules is only an iridescent dream. Courts sometimes differ now, just as they sometimes differed before the adoption of the Uniform Negotiable Instruments Act, in the application of a given rule governing negotiable instruments although the rule itself may be accepted and agreed upon by all. An examination of reported decisions dealing with instruments analogous to the one presented here and rendered after as well as before the adoption of the uniform negotiable instruments law affords concrete illustration of the variant views sometimes expressed in the application of a given rule.

The provisions of the negotiable instruments law (Sections 6017, 5834 and 5837, L. O. L.) are only declaratory of the law-merchant as it existed in most jurisdictions; and, hence judicial opinions expressed before the enactment of the statute are not without weight in the solution of the problem confronting us: *Rossville State Bank* v. *Heslet,* 84 Kan. 315 (113 Pac. 1052, 33 L. R. A. (N. S.) 738); 3 R. C. L. 907; 8 C. J. 135; Eaton & Gilbert on Com. Paper, 213. If the words "due if ranch is sold or mortgaged" are omitted from the instrument it concededly becomes a negotiable promissory note within the meaning of Section 6017, L. O. L., because it contains a promise to pay "five years from date," which

94 Or.—38

is, speaking as of the date of the note, a fixed future time. If, on the other hand, the words "five years from date" are erased, the paper is admittedly transformed into a non-negotiable instrument, because it then becomes payable "if ranch is sold or mortgaged," which, if standing alone and viewed by itself, was at the time of the execution of the instrument a "contingency" within the meaning of Section 5837, L. O. L. We are not permitted, however, to cancel any word found in the instrument, and hence the whole of the paper must be considered in determining whether the instrument is or is not negotiable: *Finley* v. *Smith,* 165 Ky. 445 (177 S. W. 262, L. R. A. 1915F, 777, 780). It will be observed that the writing does not in express terms say that the debt becomes due if the ranch is sold or mortgaged *before* "five years from date" and yet such is the obvious intent and meaning of the whole writing. The debt becomes due at all events "five years from date," and the debt cannot extend beyond that fixed, certain and definite period, because the moment the five-year period ends the debt is due, and any other interpretation of the writing would completely nullify the words "five years from date"; but if the ranch is sold or mortgaged prior to the expiration of that fixed future time, then the promiser agrees to pay the debt at the time of such sale or mortgage: *Dobbins* v. *Oberman,* 17 Neb. 163 (22 N. W. 356). The words "due if ranch is sold or mortgaged" do not extend the date of payment, but upon the contrary they serve only to accelerate the maturity of the debt. Stated broadly, the overwhelming weight of authority is to the effect that where a note is made payable on a definite day and also contains a conditional promise to pay at an earlier time, the instrument is not rendered non-negotiable by the acceleration clause: *Kiskadden* v. *Allen,* 7 Colo. 206

(3 Pac. 221); *Walker* v. *Woolen,* 54 Ind. 164 (23 Am.
Rep. 639); *Charlton* v. *Reed,* 61 Iowa, 166 (16 N. W. 64,
47 Am. Rep. 808; *Dobbins* v. *Oberman,* 17 Neb. 163 (22
N. W. 356); *Ernst* v. *Steckman,* 74 Pa. St. 13 (15 Am.
Rep. 542); *Joergenson* v. *Joergenson,* 28 Wash. 477
(68 Pac. 913, 92 Am. St. Rep. 888); *Chicago Ry. Co.* v.
*Merchants' Bank,* 136 U. S. 268 (34 L. Ed. 349, 10 Sup.
Ct. Rep. 99, see, also, Rose's U. S. Notes); *Smith* v.
*Nelson Land & Cattle Co.,* 212 Fed. 56 (128 C. C. A.
512); *White* v. *Hatcher,* 135 Tenn. 609 (188 S. W. 61);
*Bright* v. *Offield,* 81 Wash. 442 (143 Pac. 159); *Utah
State Nat. Bank* v. *Smith* (Cal.), 179 Pac. 160; *First
Nat. Bank* v. *Barrett,* 52 Mont. 359 (157 Pac. 951);
*Siegel* v. *Chicago Trust & Sav. Bank,* 131 Ill. 569 (23
N. E. 417, 19 Am. St. Rep. 51, 7 L. R. A. 537); 3 R. C. L.
908; Selover on Neg. Inst. (2 ed.), 70; Eaton & Gilbert
on Com. Paper, 220. See, also, *Page* v. *Ford,* 65 Or.
450, 469 (131 Pac. 1013, Ann. Cas. 1915A, 1048, 45
L. R. A. (N. S.) 247). The books contain a variety of
cases involving acceleration clauses. More common
illustrations are found in instruments which provide
that a default in the payment of interest or in the pay-
ment of an installment shall mature the debt. Other
familiar examples are furnished by adjudications
where a series of notes have been given for a single
debt with a provision in each note that default in the
payment of any one shall mature all the unpaid notes.
While nearly all the courts have decided that a default
in the payment of interest or in the payment of an in-
stallment or a failure to pay one of a series of notes is
such an acceleration clause as does not destroy the
negotiability of an instrument, yet there are recorded
instances where courts have held that acceleration
clauses of the kind mentioned impair the negotiability
of instruments otherwise negotiable. As already

stated, the general principle has been firmly estab-
lished, in despite of occasional dissenting voices, that
an acceleration clause does not necessarily destroy the
negotiability of an instrument. The chief difficulty,
however, is encountered whenever an attempt is made
to formulate a rule by which to determine the validity
of all acceleration provisions; and it is probably im-
possible to formulate, even in the most general lan-
guage, any rule which will include all acceleration pro-
visions that have been held sufficient, and at the same
time serve as a safe and certain guide in all jurisdic-
tions. This difficulty is neither greater nor less now
than it was previous to the adoption of the negotiable
instruments law. For example, there is a class of
cases dealing with instruments having provisions to
the effect that if at any time the holder of the note
deems himself insecure, he may declare the debt due;
or to the effect that the holder may, if he deems him-
self insecure, call upon the maker for additional
security when the value of the security given at the
time of the execution of the writing becomes impaired,
and if the maker fails to respond with additional
security, the holder may declare the debt due. The
adjudications assignable to this class are divided in
their views; but the majority of the cases decided under
the provisions of the negotiable instruments law as well
as the majority of those decided in jurisdictions where
the negotiable instruments law had not yet been
adopted, have ruled that this kind of a condition in an
acceleration clause renders the instrument non-
negotiable; *Reynolds* v. *Vint,* 73 Or. 528 (144 Pac.
526) ; *Western Farquhar Mach. Co.* v. *Burnett,* 82 Or.
174, 178 (161 Pac. 384) ; *Holliday State Bank* v. *Hoff-
man,* 85 Kan. 71 (116 Pac. 239, Ann. Cas. 1912D, 1, 35
L. R. A. (N. S.) 390); *Puget Sound State Bank* v.

*Washington Paving Co.*, 94 Wash. 504 (162 Pac. 870);
*First Nat. Bank* v. *Bynum*, 84 N. C. 24 (37 Am. Rep.
604); *Carroll County Savings Bank* v. *Strother*, 28
S. C. 504 (6 S. E. 313); *Kimpton* v. *Studebaker Bros.
Co.*, 14 Idaho, 552 (94 Pac. 1039, 125 Am. St. Rep. 185,
14 Ann. Cas. 1126); *Bright* v. *Offield*, 81 Wash. 442
(143 Pac. 159); *First Nat. Bank* v. *Russell*, 124 Tenn.
618 (139 S. W. 734, Ann. Cas. 1913A, 203). *Contra:
Empire Nat. Bank* v. *High Grade Oil Refining Co.*,
260 Pa. 255 (103 Atl. 602); *Finley* v. *Smith*, 165 Ky.
445 (177 S. W. 262, L. R. A. 1915F, 777); *Kennedy* v.
*Broderick*, 132 C. C. A. 381 (216 Fed. 137, L. R. A.
1915B, 472). The cases holding that an instrument is
not negotiable if it contains a clause giving the holder
the right to declare the debt due if he deems himself
insecure are based primarily upon the objection that
the date of maturity is placed wholly under the control
of the holder, is completely dependent upon his whim or
caprice, and is independent of any act done or omitted
by the maker; and if there is the further stipulation
that the maker will furnish added security when called
upon, then there is of course an affirmative promise of
the maker to do an act in addition to his promise to
pay money: *Puget Sound State Bank* v. *Washington
Paving Co.*, 94 Wash. 504 (162 Pac. 870, 874); *Holliday
State Bank* v. *Hoffman*, 85 Kan. 71 (116 Pac. 239, Ann.
Cas. 1912D, 1, 35 L. R. A. (N. S.) 390); *White* v.
*Hatcher*, 135 Tenn. 609, 612 (188 S. W. 61).

It is apparent from what has already been said
that some jurisdictions go further than others in
their approval of acceleration clauses; and conse-
quently a rule containing language as broad as the
rule in some jurisdictions would be too broad for
others, and a formula which is only broad enough for
the latter would not be broad enough for the former.

In this jurisdiction the holding in *Reynolds* v. *Vint*, 73 Or. 528 (144 Pac. 526), and in *Western Farquhar Mach. Co.* v. *Burnett*, 82 Or. 174 (161 Pac. 384), condemns acceleration clauses which are entirely under the control of the holder and completely dependent upon his whim or caprice independent of any act of the maker; but since neither of those decisions condemns all acceleration clauses, we have no hesitancy in declaring that we prefer to keep company with the majority of the other jurisdictions by giving approval to certain kinds of acceleration clauses. What we deem to be the better rule is best expressed by language found in *Ernst* v. *Steckman*, 74 Pa. St. 13 (15 Am. Rep. 542), where a note, payable "Twelve months after date (or before, if made out of the sale of W. S. Coffman's Improved Broadcast Seeding Machine)," was held to be negotiable. In concluding the opinion the court there said:

"The principle to be deduced from the authorities is this: To constitute a negotiable promissory note, the time, or the event, for its ultimate payment, must be fixed and certain; yet it may be made subject to contingencies, upon the happening of which, prior to the time of its absolute payment, it shall become due. The contingency depends upon some act done or omitted to be done by the maker, or upon the occurrence of some event indicated in the note; and not upon any act of the payee or holder, whereby the note may become due at an earlier day."

The principle which was expressed in *Ernst* v. *Steckman* was subsequently reiterated and applied by the supreme court of the United States in the leading and oft-cited case of *Chicago Ry. Co.* v. *Merchants' Bank*, 136 U. S. 268 (34 L. Ed. 349, 10 Sup. Ct. Rep. 999, see, also, Rose's U. S. Notes). Further exemplification of this principle may be found in the fol-

lowing precedents where the facts in some instances were exactly like and in all instances were analogous to the facts presented here: *Kiskadden* v. *Allen,* 7 Colo. 206 (3 Pac. 221); *Elliott* v. *Beech,* 3 Manitoba, 213; *Walker* v. *Woolen,* 54 Ind. 164 (23 Am. Rep. 639); *Charlton* v. *Reed,* 61 Iowa, 166 (16 N. W. 64, 47 Am. Rep. 808); *Dobbins* v. *Oberman,* 17 Neb. 163 (22 N. W. 356); *Joergenson* v. *Joergenson,* 28 Wash. 477 (68 Pac. 913, 92 Am. St. Rep. 888). The ruling in *Reynolds* v. *Vint,* 73 Or. 528 (144 Pac. 526), is not inconsistent with the adoption of the principle stated in *Ernst* v. *Steckman,* 74 Pa. St. 13 (15 Am. Rep. 542); *White* v. *Hatcher,* 135 Tenn. 609, 612 (188 S. W. 61); *First Nat. Bank* v. *Russell,* 124 Tenn. 618 (139 S. W. 734, Ann. Cas. 1913A, 203); *Bright* v. *Offield,* 81 Wash. 442 (143 Pac. 159, 161); *Joergenson* v. *Joergenson,* 28 Wash. 477, 481 (68 Pac. 913, 92 Am. St. Rep. 888); *Holliday State Bank* v. *Hoffman,* 85 Kan. 71 (116 Pac. 239, Ann. Cas. 1912D, 1, 35 L. R. A. (N. S.) 390, 395); *Clark* v. *Skeen,* 61 Kan. 526 (60 Pac. 327, 78 Am. St. Rep. 337, 49 L. R. A. 190). The note signed by Bradshaw conforms with the requirements of Section 5837, L. O. L., and is a negotiable promissory note; *Utah State Nat. Bank* v. *Smith* (Cal.), 179 Pac. 160; *Bright* v. *Offield,* 81 Wash. 442 (143 Pac. 159).

6. The respondent has argued that the debt represented by the note automatically became due when the conveyance was made to Frederick T. Lewis on January 18, 1913; but the answer is that the thoroughly established and indeed almost universal, if not the universal, rule is that the acceleration clause is not self-executing, but it merely confers an option upon the holder to treat the debt as due: *Belloc* v. *Davis,* 38 Cal. 243, 251; *White* v. *Hatcher,* 135 Tenn. 609, 616 (188 S. W. 61); *Clark* v. *Skeen,* 61 Kan. 526 (60 Pac.

327, 78 Am. St. Rep. 337, 49 L. R. A. 190); *First Nat. Bank* v. *Parker,* 28 Wash. 234, 237 (68 Pac. 756, 92 Am. St. Rep. 828); *Keene Five Cent Savings Bank* v. *Reid,* 123 Fed. 221 (59 C. C. A. 225); *Gillette* v. *Hodge,* 170 Fed. 313, 314 (95 C. C. A. 205); *Chicago Ry. Co.* ·v. *Merchants' Bank,* 136 U. S. 268, 284 (34 L. Ed. 349, 10 Sup. Ct. Rep. 999, see, also, Rose's U. S. Notes).

7. There is no evidence indicating or even intimating that the plaintiff exercised or attempted to exercise the option which the note conferred upon the holder to declare the note due in the event of a sale or mortgage of the ranch. Inasmuch as the plaintiff is relying upon the "general" date of maturity specified in the instrument and since the acceleration clause was not self-executing, it was unnecessary for the plaintiff to affirm a negative by pleading or proving it: *Dobbins* v. *Oberman,* 17 Neb. 163, 165 (22 N. W. 356); *Walker* v. *Woolen,* 54 Ind. 164, 165 (23 Am. Rep. 639).

8. One of the further and separate defenses interposed by Effie May Terrill is based upon the allegation that the note was delivered to and accepted by the appellant upon an agreement "to look entirely to" Bradshaw for payment without any claim upon the respondent "for liability for any portion of said note." Through cross-examination of witnesses for the appellant the respondent succeeded in introducing parol evidence in support of the defense last mentioned. The direct examination justified the cross-examination which was conducted by the respondent and permitted by the court (*Speer* v. *Smith,* 83 Or. 571, 575 (163 Pac. 979); and consequently the only remaining question arising out of the cross-examination is whether this testimony was competent for any purpose. The appellant insists that the testimony

was incompetent because it varied the terms of a written contract. The respondent relies upon an ingenious argument. The respondent endeavors to apply a principle discussed in *Colvin* v. *Goff*, 82 Or. 314 (161 Pac. 568, L. R. A. 1917C, 300). The argument of the respondent is, in substance, that the note on its face contained two contracts: One between the maker and the payee, and the other between the indorser and indorsee; that while there was a manual transfer of the paper for the purpose of effecting a delivery of the contract between the maker and payee, nevertheless the seeming contract between the indorser and indorsee "was never delivered except in the sense of a physical delivery"; and that therefore the respondent is "not seeking to vary the terms of a written contract, to wit: the contract of the indorser, but to show that this written contract was never delivered."

There is a divergence of judicial opinion as to whether or not the implications and intendments which the law attaches to a blank indorsement of negotiable commercial paper make such blank indorsement the equivalent of a complete written contract which cannot be varied by parol evidence: 8 Cyc. 264; 3 R. C. L. 974; 8 C. J. 1033; Crawford's Ann. Neg. Inst. Law (Rev. Uniform ed.), 133. In this jurisdiction, however, it has been the settled rule for nearly forty years that parol evidence cannot be received to vary or contradict the contract which the law writes over a blank indorsement when made after the delivery of a promissory note to the payee: *Smith* v. *Caro*, 9 Or. 278; *Carroll* v. *Nodine*, 41 Or. 412, 415 (69 Pac. 51, 93 Am. St. Rep. 743); *Smith* v. *Bayer*, 46 Or. 143, 147 (79 Pac. 497, 114 Am. St. Rep. 858). To this general rule there are certain exceptions which are specified in *Dale*

v. *Gear,* 38 Conn. 15 (9 Am. Rep. 353). See also: *Smith* v. *Caro,* 9 Or. 278, 287; *Moll* v. *Roth Company,* 77 Or. 593, 599 (152 Pac. 235); *Jones* v. *Albee,* 70 Ill. 34. The rule relied upon by the respondent is not available to her. The facts which she herself admits effectively prevent her from shielding herself with that rule. The manual transfer of the note was in no sense executory, but upon the contrary it was a completed and wholly executed act. There was no stipulation preventing the manual transfer from becoming a completed delivery with all the attending rights and obligations. When placed in the hands of the appellant the note bore the blank indorsement of the respondent. It is conceded by the respondent that she intended to transfer her ownership in the note. The transfer of ownership was not made contingent upon the happening of some event. The transfer was a finality. The contract of transfer, whatever the contract may have been, was executed and completed. The appellant says that the terms of the contract are to be found in the signature written on the back of the note; while the respondent argues that when the ownership of the note was transferred to the appellant the latter accepted the instrument upon an agreement different from that which the law writes into the blank indorsement of the respondent. In the last analysis the contention of the respondent is only an effort to vary and contradict the written contract of indorsement; and, hence, the parol testimony relating to any oral contemporaneous agreement was incompetent. The respondent has not brought herself within either of the first three exceptions noted in *Dale* v. *Gear,* 38 Conn. 15 (9 Am. Rep. 353, 355); and if there was an equity bringing the respondent in the fourth class of exceptions, "it must be set up as an equity provable

in equity, to bar an apparent legal liability.'' The defense urged by the respondent does not involve the question of waiver as did the case of *Moll* v. *Roth Company*, 77 Or. 593, 600 (152 Pac. 235).

9, 10. Both Brownsboro and Medford are in Jackson County. The letter which Charles Nickell wrote for the purpose of giving notice of dishonor was deposited in the postoffice at Medford and addressed to the respondent at Brownsboro, where she lived. The postmark on the envelope in which the letter was mailed indicates that it was postmarked at the Medford postoffice at 3:30 P. M. on August 10, 1915. Charles Nickell testified that he deposited the letter in the Medford postoffice but he did not state the time of the deposit further than to explain that he deposited the letter on the date shown by the envelope. The respondent was called as a witness for the plaintiff and stated that she received the letter, but she did not remember the date of its receipt. There is not a word of evidence showing the distance between Medford and Brownsboro. There is not a syllable of testimony telling about the mail service between the two postoffices. The record is utterly barren of any evidence showing whether there were one or more mails or any mail leaving Medford for Brownsboro on August 10th, or if there was any mail for Brownsboro on that day, whether it was before or after 3:30 P. M. The most that we can say from the record is that the letter was deposited at some time in the Medford postoffice on August 10th and postmarked at 3:30 P. M. and that afterwards the respondent received the letter in due course of mail. For aught that we can ascertain from the record there was a mail leaving Medford for Brownsboro at noon on August 10th; and if there was a mail leaving at that

hour and no other mail leaving on that day, then, in the absence of some excuse sanctioned by the law, the notice of dishonor was not mailed in time. The statute which governs this phase of the controversy provides that:

"Where the person giving and the person to receive notice reside in different places, the notice must be given within the following times: (1) if sent by mail, it must be deposited in the postoffice in time to go by mail the day following the day of dishonor, or if there be no mail at a convenient hour on that day, by the next mail thereafter; * * ": Section 5937, L. O. L.

The negotiable instruments law prescribes a definite time for mailing notice of dishonor. If there was only one mail on August 10th and if that mail left at a convenient hour prior to 3:30 P. M., the notice mailed by the appellant was too late. If there was no outgoing mail at all for Brownsboro on that day, then, of course, the letter was deposited in time. The liability of an indorser of a negotiable promissory note is contingent and, among other things, the liability is conditioned upon giving notice of dishonor within the time specified by the statute. The burden is upon the holder to prove that the notice was mailed within the time prescribed by law; it is not enough merely to show that the notice was deposited in the postoffice on the day following the day of dishonor, but it must also be shown that the notice was deposited "in time to go by mail the day following the day of dishonor," if there was a mail at a convenient hour on that day. Strict proof is required. There is an utter want of evidence concerning out-going mails and consequently the judgment of involuntary nonsuit was properly rendered: *United States* v. *Barker,* 24 Fed. Cas. No. 14,519; *First Nat. Bank* v. *Miller,* 139 Wis. 126 (120

N. W. 821, 131 Am. St. Rep. 1040) ; *Downs* v. *Planters'*
*Bank,* 1 Smedes & M. (Miss.) 261 (40 Am. Dec. 92) ;
*Marks* v. *Boone,* 24 Fla. 177 (4 South. 532) ; *Richard-*
*son* v. *Kulp,* 81 N. J. L. 123 (78 Atl. 1062) ; *Common-*
*wealth Bank* v. *Strong,* 28 Vt. 316 (67 Am. Dec. 714) ;
*Corbin* v. *Planters' Nat. Bank,* 87 Va. 661 (13 S. E. 98,
24 Am. St. Rep. 673) ; 8 C. J. 655, 1016, 1055 ; Eaton &
Gilbert on Com. Paper, 507.

The judgment is affirmed.        AFFIRMED.

McBRIDE, C. J., and BENSON and BURNETT, JJ., con-
cur.