(December 31, 1923.)

## McCORNICK & CO., Bankers, a Corporation, Respondent, v. GEM STATE OIL & PRODUCTS COMPANY, a Corporation, Appellant.

[222 Pac. 286.]

BILLS AND NOTES — NEGOTIABILITY — SUSPENSION OF PAYMENT — AC-
CELERATION CLAUSE—CONTINGENCY SOLELY WITHIN CONTROL OF
MAKER—DOES NOT RENDER INSTRUMENT NON-NEGOTIABLE.

1. The term "suspending payment" means suspension of pay-
ment because of inability to pay in due course.

2. A written promise for the payment of money in ordinary
terms of negotiability, containing certain additional clauses for
the acceleration of the due date upon the happening of special
events solely within the control of the maker, or not within the
control of any party to the paper, is not by such stipulations
rendered non-negotiable.

APPEAL from the District Court of the Fifth Judicial
District, for Bannock County. Hon. O. R. Baum, Judge.

Action by McCornick & Co., bankers, a corporation,
against Gem State Oil & Products Co., a corporation.
From a judgment for plaintiff, defendant appeals.
*Affirmed.*

Peterson & Coffin, for Appellant.

The instrument sued upon in this case is not a nego-
tiable instrument. (*Kimpton v. Studebaker Bros.,* 14
Ida. 552, 125 Am. St. 185, 94 Pac. 1039; *Moyer v. Hyde,*
35 Ida. 161, 204 Pac. 1068.)

The debtor or party liable on an assigned chose in
action is not affected by the assignment until he has

Publisher's Note.

2. Provisions accelerating maturity as affecting negotiability of
bills or notes, see notes in 35 L. R. A., N. S., 390; L. R. A. 1915B,
472.

notice thereof, and consequently he may set up against the claim of the assignee any defense acquired before notice that would avail him against the assignor, or any compromise or release of the assigned claim by the latter before notice will be valid against the assignee, and discharge the debtor.  (5 C. J. 934, and authorities cited; C. S., sec. 6635.)

Budge & Merrill, for Respondent.

The instrument sued upon in this case is a negotiable instrument.  (*Utah State Nat. Bank v. Smith,* 180 Cal. 1, 179 Pac. 160; *Nickell v. Bradshaw,* 94 Or. 580, 11 A. L. R. 623, 183 Pac. 12; *Farmers & Merchants' Bank v. Davis,* 144 La. 532, 80 So. 713; Acceleration Provisions in Time Paper, vol. 22, Howard Law Review, p. 747.)

Payment of a negotiable instrument to one other than the holder is not a discharge of the instrument.  (*Astoria State Bank v. Madwood,* 38 S. D. 437, 161 N. W. 815; *Miles v. Dodson,* 102 Ark. 422, 144 S. W. 908, 50 L. R. A., N. S., 83; *Becker v. Hart,* 129 App. Div. 511, 113 N. Y. Supp. 1053.)

ADAIR, District Judge.—The plaintiff instituted this action against the defendant and appellant upon three certain written instruments known as trade acceptances. Three causes of action were set up, each having as its basis one of said papers, which were in the principal sums of $1,000, $1,000 and $593.54, respectively, and each was in the following language, except as to amounts:

"Date 5–3–20.

"No. ———.                              $1000.00

"On July 8, 1920, pay to the order of Utah Rubber Co. One Thousand & No 100 Dollars value received and charge the same to the account of

"UTAH RUBBER CO.
"J. W. FRANCIS.

"To Gem State Oil & Products Co.,
   "Pocatello, Idaho."

Written across the face of each instrument is the following:

"Accepted May 3rd, 1920. Payable at Bannock National Bank. Gem State Oil & Products Co. M. V. Chapin."

On the margin of each instrument appears the following:

"Trade Acceptance.

"The obligation of the acceptor of this bill arises out of the purchase of goods from the drawer. Upon the acceptor hereof suspending payment, giving a chattel mortgage, suffering a fire loss, disposing of his business or failing to meet at maturity any prior trade acceptance, this trade acceptance, at the option of the holder, shall immediately become due and payable."

There is no controversy as to the facts in the case. It appears that on May 4, 1920, the Utah Rubber Company, for a valuable consideration, sold and delivered all three of these trade acceptances to the respondent Bank. The instrument involved in this appeal was duly indorsed by said Utah Rubber Company, but the other two were not so indorsed. After selling these instruments to the respondent bank, the appellant gave back to the drawer, as payment in full thereof, the goods for which the bills were originally given. This was done on June 1, 1920, and without notice of the assignment of said instruments to the respondent. The first notice, which appellant ever received of the transfer of said instruments was about June 24, 1920. After maturity of these bills respondent instituted this suit to recover thereon from the appellant. Appellant pleaded payment, and after the submission of testimony, which was undisputed, the court directed a verdict in favor of the respondent and against appellant on the instrument which had been indorsed, and against the respondent and in favor of the appellant on the two instruments not indorsed. The appellant appealed from

the judgment entered against it upon the verdict thus rendered.

The correctness of the ruling of the learned trial judge, and the verdict and judgment based thereon, requires the determination of the negotiability of the instrument hereinabove set out. If it was a negotiable instrument, the payment thereof to the original payee, Utah Rubber Company, before maturity, and without notice of its assignment, would not discharge it as against the holder in due course, the respondent herein. (*Astoria State Bank v. Markwood*, 38 S. D. 437, 161 N. W. 815; *Miles v. Dodson*, 102 Ark. 422, 144 S. W. 908, 50 L. R. A., N. S., 83; *Becker v. Hart*, 129 App. Div. 187, 113 N. Y. Supp. 1053.)

If, on the other hand, the instrument is non-negotiable, the appellant could set up the defense of payment against the assignee thereof, the respondent herein, and since the payment and discharge of the instrument was made without notice of its assignment, and before maturity, it would be a valid and complete defense to said action.

C. S., sec. 6635, reads:

"In the case of an assignment of a thing in action, the action by the assignee is without prejudice to any set-off, or other defense existing at the time of, or before, notice of the assignment; but this section does not apply to a negotiable instrument, transferred in good faith and upon good consideration, before maturity."

See, also, 5 C. J. 934, and authorities there cited.

We are concerned, therefore, only with the one question as to the negotiability of said instrument. Aside from the printed matter on the margin, the paper is purely an ordinary bill of exchange, properly drawn and accepted, and complying in all respects with the requirements of the statute and the law-merchant as to negotiable paper. There is obviously no doubt but that it would be negotiable, except for such marginal matter, and to that, and that alone, we will direct our attention.

The law of bills and notes and other means of trade, like all other substantive law, is the creature of growth. Founded on the custom and needs of merchants, it is the combined result of reason and experience, and should keep pace with and respond to commercial usage. Judge Dawkins in *Farmers & Merchants' Bank v. Davis,* 144 La. 532, 80 So. 713, very aptly said:

"The tendency of modern jurisprudence is to get away from the rigid rules of interpretation which seem to have prevailed when the famous expression of Chief Justice Gibson, that 'a negotiable instrument is a courier without luggage' was coined. The law of negotiable instruments, as a part of the law merchant, is based upon the necessities, usages and customs of business, and must develop with it. Whenever the additional stipulations are merely in aid of the collection of the note, and do not constitute an undertaking to give or do something else foreign to that end, they do not destroy its negotiability."

In the modern commercial world, trade acceptances are fast becoming an important form of contract, ranking with notes, checks, drafts and other mediums of trade. The matter contained therein, aside from the direct order to pay money, is often valuable and intended to facilitate its transfer, and an option similar to that inserted in the margin of the instrument in question might tend to assist the holder in its transfer or sale to another. The fact that it does contain matter other than an order for the payment of money does not in itself render it non-negotiable. The first sentence in the margin to the effect that "the obligation of the acceptor of this bill arises out of the purchase of goods from the drawer" does not affect nor deprive the instrument of its negotiability.

C. S., sec. 5870, subd. 2, provides:

"An unqualified order or promise to pay is unconditional within the meaning of this chapter, though coupled with a statement of the transaction which gives rise to the instrument."

The last sentence, providing for accelerating the time of payment upon the happening of certain contingencies or events, which may or may not take place, is the provision in the paper which appellant contends renders it non-negotiable. Does this clause render the time of payment undeterminable or indefinite?

The Uniform Negotiable Instruments Act, adopted by Idaho, as well as all the states of the Union with the exception of Georgia and Texas, makes definiteness in the time of payment one of the controlling factors in determining the question of negotiability. If the clause in question does not render the due date indefinite, the instrument is negotiable.

It is generally held that it is the duty of the courts to have in mind the purpose of securing uniformity in the law of commercial paper. That was the motive which actuated the various state legislatures when they adopted and passed the Uniform Negotiable Instruments Act.

The precise question involved in the instant case has never been before this court for determination. This court has held that a recital in a title-retaining note that the title to the property for which it was given shall remain in the payee, and that he shall have the right to take possession of it whenever he may deem himself insecure, even before the maturity of the note, renders such instrument non-negotiable. (*Kimpton v. Studebaker Bros. Co.*, 14 Ida. 552, 125 Am. St. 185, 14 Ann. Cas. 1126, 94 Pac. 1039.) In that case, however, the issue was determined on the theory that the contract contained a covenant and promise to do certain acts in addition to the payment of money, as well as leaving the time of payment uncertain. It was held that the clause accelerating the time of payment gave the holder the right to declare the debt due, thus placing the right of declaring the date of maturity wholly under the control of the holder, and completely dependent upon his whim, or caprice, and independent of any act of the maker.

Again, in the case of *Moyer v. Hyde*, 35 Ida. 160, 204 Pac. 1068, this court had before it another title-retaining note, in which it reiterated the principle announced in the earlier case just referred to.

These two Idaho cases are not authority in the instant case, for the reason that the facts are not in point. By this opinion we do not abrogate the principle stated in, nor overrule, the cases of *Kimpton v. Studebaker Bros. Co.* and *Moyer v. Hyde, supra,* but we simply hold that the facts are so dissimilar that a different rule should govern.

The paper involved here provides for the acceleration of the time of payment upon the happening of any one of five events, four of which, viz., suspending payment, giving a chattel mortgage, disposing of his business, or failing to meet at maturity any prior trade acceptance, are wholly within the control of the acceptor or maker, and the other contingency, that is, suffering a fire loss, is an event over which no party to the paper has any control. None of the contingencies named are within the control of the holder.

Each of the clauses in this instrument providing for accelerating the time of payment is a contingency definitely stated therein and having a well-known and recognized meaning incapable of misconstruction. The phrases "suffering a fire loss," "disposing of his business" and "failing to meet at maturity any prior trade acceptance," could not be misunderstood nor be more accurately and concisely stated. The "giving of a chattel mortgage" means the signing and delivery thereof, or, in other words, its execution in such a manner as to make it a valid lien upon the property of the maker described in such mortgage.

It has been suggested that the phrase "suspending payment" creates some doubt as to the intended meaning, and thereby renders the time of payment uncertain. An examination of the authorities removes this objection. As is stated in *In re Wolf,* 30 Fed. Cas. 406, 4 Sawy. 168, 17 N. B. R. 423:

"Suspension of payment means something more than a failure of the maker of such paper as this to seek the holder and pay him. Business men understand very well what the term means; there is the idea in it of a failure to pay from an inability to do so." .

In *Phillips v. Surridge*, 9 Com. B. 743, 67 E. C. L. 743, it is in effect held that a suspension of payment occurs where a person indebted to others is unable to meet his engagements with and to pay his creditors in full.

A condition that precludes payments from being made in the ordinary course of events results in a suspension of payment, whether there exists a permanent state of insolvency or a possibility of the resumption of payment at a later date. (*Crook v. Morley*, (1891) A. C. 316, 319, 61 L. J. Q. B. 97, 65 L. T. Rep., N. S., 389. See note, 37 Cyc. 649.)

We think this phrase, as used in this contract, clearly means suspension of payment because of inability to pay in due course of business.

The overwhelming trend of modern authority is to the effect that where an instrument is made payable on a definite day, and also contains a conditional promise to pay at an earlier date, the instrument is not necessarily rendered non-negotiable by such acceleration clause. (*Hutson v. Rankin*, 36 Ida. 169, 213 Pac. 345; *Kiskadden v. Allen*, 7 Colo. 206, 3 Pac. 221; *Walker v. Woollen*, 54 Ind. 164, 23 Am. Rep. 639; *Charlton v. Reed*, 61 Iowa, 166, 47 Am. Rep. 808, 16 N. W. 64; *Dobbins v. Oberman*, 17 Neb. 163, 22 N. W. 356; *Ernst v. Steckman*, 74 Pa. 13, 15 Am. Rep. 542; *Joergenson v. Joergenson*, 28 Wash. 477, 92 Am. Rep. 888, 68 Pac. 913; *Chicago Ry. Co. v. Merchants' Bank*, 136 U. S. 268, 10 Sup. Ct. 999, 34 L. ed. 349; *Smith v. Nelson Land & Cattle Co.*, 212 Fed. 56, 128 C. C. A. 512; *White v. Hatcher*, 135 Tenn. 609, 188 S. W. 61; *Bright v. Offield*, 81 Wash. 442, 143 Pac. 159; *Utah State Nat. Bank v. Smith*, 180 Cal. 1, 179 Pac. 160; *First Nat. Bank v. Barrett*, 52 Mont. 359, 157 Pac. 951; *Siegel v. Chicago Trust & Savings Bank*, 131

Ill. 569, 19 Am. St. 51, 23 N. E. 417, 7 L. R. A. 537; Sclover on Negotiable Instruments, 2d ed., 70; *Page v. Ford,* 65 Or. 450, Ann. Cas. 1915A, 1048, 131 Pac. 1013, 45 L. R. A., N. S., 247.)

Before the enactment of the uniform negotiable instruments law the great weight of authority, under the law-merchant, also was that a clause accelerating the due time therein did not destroy its negotiability. (*Chicago Ry. Co. v. Merchants' Bank, supra; Phelps v. Sargent,* 69 Minn. 118, 71 N. W. 927; *Wilson v. Campbell,* 110 Mich. 580, 68 N. W. 278, 35 L. R. A. 544; *Clark v. Skeen,* 61 Kan. 526, 78 Am. St. 337, 60 Pac. 327, 49 L. R. A. 190; *Harrison v. Hunter* (Tex. Civ.), 168 S. W. 1036; *First Nat. Bank v. Garland,* 160 Ill. App. 407; *Hunter v. Clarke,* 184 Ill. 158, 75 Am. St. 160, 56 N. E. 297; *Merrill v. Hurley,* 6 S. D. 592, 55 Am. St. 859, 62 N. W. 958; *Stark v. Olsen,* 44 Neb. 646, 63 N. W. 37; *Smith v. Williamson,* 8 Utah, 219, 30 Pac. 753.)

Other decisions based upon the uniform negotiable instruments law hold that acceleration clauses do not destroy the negotiability of a promissory note. (*First Nat. Bank v. Barrett, supra; Bright v. Offield, supra; Mackintosh v. Gibbs,* 79 N. J. L. 40, 74 Atl. 708; *Des Moines etc. Bank v. Arthur,* 163 Iowa, 205, Ann. Cas. 1916C, 498, 143 N. W. 556.)

The most common cases involving this principle which have arisen are those which provide for accelerating the due date, at the option of the holder, for default in the payment of interest, and those where several notes maturing at different times belong to a single transaction and form a connective series; the negotiability thereof is not affected by a provision that on the failure of the maker to pay any one of the series, the rest shall become due and payable at the option of the holder.

The general rule is that where instruments are payable at a day certain, or sooner, if some specific event shall happen, they shall be construed to be due at all events at the day limited, and to be negotiable. (8 C. J. 138.)

In *Hutson v. Rankin, supra,* this court held that the negotiability of a promissory note is not affected or destroyed by a provision therein that upon default in payment of interest the whole shall become due, and that after maturity the interest shall be increased from eight to ten per cent.

In the case of *Utah State Nat. Bank v. Smith,* 180 Cal. 1, 179 Pac. 160, the California court held that under the Negotiable Instruments Act of that state, providing that an instrument to be negotiable must be payable at a determinable future time, when a note is so payable, and it further provides that if interest is not paid when due, both principal and interest shall become due at the option of the holder, such a note is negotiable; "determinable" meaning what may be determined, found out, definitely decided upon or settled.

In the late case of *Nickell v. Bradshaw,* 94 Or. 580, 11 A. L. R. 623, 183 Pac. 12, the court held that a note otherwise negotiable, but containing the clause "due if ranch is sold or mortgaged" is not rendered non-negotiable by the quoted words.

In each of these last-mentioned cases a very exhaustive and well-considered opinion is written, reviewing the modern decisions on the question of the effect of such acceleration clauses. In these opinions the writers point out the difficulty and impossibility of laying down any hard-and-fast rule which could govern each individual case that might arise. In *Nickell v. Bradshaw, supra,* Judge Harris quotes with approval from the opinion in *Ernst v. Steckman,* 74 Pa. 13, 15 Am. Rep. 542, as follows:

"The principle to be deduced from the authorities is this: To constitute a negotiable promissory note, the time, or the event, for its ultimate payment, must be fixed and certain; yet it may be made subject to contingencies, upon the happening of which, prior to the time of its absolute payment, it shall become due. The contingency depends upon some act done or omitted to be done by the

maker, or upon the occurrence of some event indicated in the note; and not upon any act of the payee or holder, whereby the note may become due at an earlier day.''

We think this general rule should be, and the same is, adopted in this state, and applying it to the paper here in question, we hold that the same is negotiable. None of the conditions in the acceleration clause depend upon any act of the holder, nor are they within his control, but all of such contingencies depend either upon some act or omission of the maker, or upon an event indicated in the paper not within the control of either party.

The judgment is affirmed, with costs to respondent.

McCarthy, Dunn and Wm. E. Lee, JJ., concur.