[S. F. No. 14264. In Bank.—October 16, 1931.]

THE PEOPLE'S FINANCE & THRIFT COMPANY OF VALLEJO (a Corporation), Respondent, v. SHAW-LEAHY CO. (a Corporation), Appellant.

Stanislaus A. Riley for Appellant.

O'Hara, Hatch & Pope for Respondent.

CURTIS, J.—Upon further consideration of the respective claims of the parties in the above-entitled action, we have concluded that the opinion of the District Court of Appeal rendered herein contains a correct determination of the issues presented, and we hereby adopt said opinion as the opinion of this court. ▇ The opinion follows the ruling of the Supreme Court of Idaho in the case of *McCornick & Co.* v. *Gem State Oil & Products Co.*, 38 Idaho, 470 [34 A. L. R. 867, 222 Pac. 286]. The acceleration clauses contained in the trade acceptance in the persent action are word for word like those construed by the Supreme Court of Idaho in the case just mentioned. This state and the state of Idaho have adopted the Uniform Negotiable Instruments Law and the provisions thereof involved in these two cases are identical. It is useless to enact legislation having for its object the unification of our laws if the courts of the several states are to place different and opposite constructions as to the meaning of the laws thus enacted. Of course, if there is anything manifestly erroneous in the interpretation of a statute given by the courts of one jurisdiction it should not be followed by the courts in other jurisdictions. We find nothing in the opinion of *McCornick & Co.* v. *Gem State Oil & Products Co., supra,* out of harmony with the decisions of this state, or otherwise erroneous. We are, therefore, of the opinion that, in harmony with the policy of this state, as manifested by its adoption of the Uniform Negotiable Instruments Act, if for no other reason, we should align our decision with that rendered by the Supreme Court of Idaho. The opinion of the District Court of Appeal rendered herein is as follows:

"Respondent obtained judgment against the corporate defendants above named in an action to recover on a trade acceptance; and one of the defendants, Shaw-Leahy Co., has ap-

pealed, the single question presented for determination being the negotiability of the trade acceptance.

"The instrument bears date November 8, 1924, and was made payable on February 12, 1925. It was given by appellant to the defendant Martin S. Barrett Co. (hereinafter referred to as defendant) in payment of certain goods sold by the latter to appellant at an agreed price of $475. Under the terms of the sales contract appellant was given the right to return the goods or any part thereof at any time prior to the maturity date of the trade acceptance; and on December 1, 1924, it exercised its right in this regard and returned the goods, which were accepted by the defendant. Thereupon by mutual consent the sales contract was rescinded and appellant demanded the surrender of the trade acceptance. In response to the demand defendant represented that for business reasons it desired that the instrument remain with the bank until the maturity thereof, promising that it would pay the same at that time; and appellant assented to the proposition. The truth of the matter was that two weeks previously and on November 15, 1924, defendant assigned and transferred said trade acceptance to respondent for a valuable consideration, but appellant did not learn of such assignment until more than a year and a half thereafter. When the trade acceptance fell due defendant failed to keep its promise to pay the same, and more than two years thereafter respondent brought this action against appellant and defendant to collect the amount thereof. The instrument in question reads as follows: 'Trade Acceptance. The obligation of the acceptor of this bill arises out of the purchase of goods from the drawer. Upon the acceptor hereof suspending payment, giving a chattel mortgage, suffering a fire loss, disposing of his business or failing to meet at maturity any prior trade acceptance, this trade acceptance, at the option of the holder, shall immediately become due and payable. No. 728. San Francisco, Calif., date—Nov. 8, 1924. $475.00. On February 12, 1925, pay to the order of Martin S. Barrett Co., 55 New Montgomery St. San Francisco, Calif.—Four Hundred seventy-five and No/100 Dollars. Value received and charge the same to the account of Martin S. Barrett Company, 55 New Montgomery Street, San Francisco. Shaw-Leahy Co. 416 Market Street, San Francisco, Calif. Martin S. Barrett, Drawer, President.' And across the face of the

instrument was written: 'Payable at Anglo-California Trust Co., Market and Sansome Streets, S. F. Shaw-Leahy Co., Inc. D. R. Shaw.'

■ "The question as to the negotiability of the instrument arises from the provision thereof accelerating its maturity date; and appellant contends as a matter of law that in order to preserve negotiability the events and contingencies specified in the acceleration clauses must be such in their nature that the happening thereof will be brought about by some act or omission on the part of the acceptor, that is, which will depend upon his future volition; also that the same must relate to some business act incidental to the collection of the instrument. As will be noted, the provision of the instrument in question declares that the same is payable on February 12, 1925, but shall mature immediately upon the happening of any one of the five events or contingencies set forth therein; and while appellant concedes that there are cases sustaining negotiability of instruments embodying acceleration clauses similar in substance to clauses 1, 2 and 4 of the instrument under consideration, it is claimed that clauses 3 and 5 thereof, relating to the events of 'suffering a fire loss' and 'failure to meet at maturity any prior trade acceptance', do not fall within the scope of the foregoing rules, and therefore are destructive of negotiability.

"Much of the confusion existing in the decisions of courts of the various states relating to the law of negotiable instruments which led to the adoption in nearly all of the states of the uniform negotiable instrument law seems to have continued particularly with reference to the effect upon negotiability of certain forms of acceleration clauses; and evidently any attempt to reconcile the conflicting cases would be both interminable and impossible. As said by the Supreme Court of this state in the case of *Utah Nat. Bank* v. *Smith,* 180 Cal. 1 [179 Pac. 160, 161], in quoting the language of the supreme court of the state of Utah (*Felt* v. *Bush,* 41 Utah, 462 [126 Pac. 688]): ' . . . the negotiable instruments law was intended to give legislative sanction to the majority rule, to which reference has been made, and was conceived by its authors and adopted by the different state legislatures for the express purpose of harmonizing the conflicting decisions which had been rendered on the subject of negotiable instru-

ments and the rights of those interested therein whose rights were acquired before maturity. As we view it, therefore, it is our plain duty to follow the numerous decisions that have directly passed upon the negotiable instrument law, and have construed it in accordance with the majority rule. The question is one of business expediency, and not of logic or equity as applied to an individual case.'

"The acceleration clauses contained in the instrument in the present case are identical in form with those construed by the supreme court of Idaho, in the case of *McCornick* v. *Gem State Oil & Products Co.*, 38 Idaho, 470 [34 A. L. R. 867, 222 Pac. 286], which state, like California, has adopted the uniform negotiable instrument law, and it was held that said clauses were not destructive of negotiability. Appellant has advanced no convincing reasons to show that the decision in that case is unsound or contrary to the weight of authority; and we are of the opinion, therefore, that it is determinative of the present controversy.

"The arguments appellant makes in furtherance of its legal contentions are based mostly upon certain language used in an article appearing in a law review published by one of the eastern universities, portions of which article are quoted in appellant's brief. But it is evident from an inspection thereof that the author, after reviewing the conflicting decisions, assumes only to set forth his individual views as to what the law upon this particular subject ought to be, some of which are in harmony with the law as declared in adjudicated cases, and others are in conflict therewith. The author's view that negotiability is destroyed by acceleration clauses relating to extrinsic facts is admittedly based upon the English rule announced in the case of *Alexander* v. *Thomas*, 16 Q. B. (Eng.) 333; but the author frankly concedes that 'numerous decisions in. this country repudiate the English case and uphold negotiability' (citing among other cases 'those collected in 1 Daniel Negotiable Instruments, sec. 43; 8 Corpus Juris, 138, note 75; and *Van Arsdale-Osborne Brokerage Co.* v. *Martin*, 81 Kan. 499 [106 Pac. 42])'. For example it has been held that negotiability is not destroyed where the instrument provides that the maturity date shall be accelerated if certain property is sold (*Nickell* v. *Bradshaw*, 94 Or. 580 [11 A. L. R. 623, 183 Pac. 12]), or in case of the death of the maker before maturity

(*Miller* v. *Western College of Toledo,* 177 Ill. 280 [69 Am. St. Rep. 242, 42 L. R. A. 797, 52 N. E. 432]; *Bristol* v. *Warner,* 19 Conn. 7; *Martin* v. *Stone,* 67 N. H. 367 [29 Atl. 845]); or upon the completion of a building (*Stevens* v. *Blunt,* 7 Mass. 240; *Goodloe* v. *Taylor,* 10 N. C. 458); or if certain machinery is sold (*Ernst* v. *Steckman,* 74 Pa. St. 13 [15 Am. Rep. 542]; *Cisne* v. *Chidester,* 85 Ill. 523; *Charlton* v. *Reed,* 61 Iowa, 166 [47 Am. Rep. 808, 16 N. W. 64]; or upon the delivery of certain property to the payee (*Dobbins* v. *Obermann,* 17 Neb. 163 [22 N. W. 356]). And the cases of *McCornick* v. *Gem State Oil & Products Co., supra,* and *Ernst* v. *Steckman, supra,* are authority for the proposition that it is not essential that the events be such that the happening thereof depends upon the future volition of the acceptor, or be wholly under his control, but that they may relate to the happening of contingencies beyond the control of both the acceptor and the holder. True, there are cases holding that negotiability is destroyed where acceleration is placed entirely under the control of the holder, or made dependent upon his whim or caprice, regardless of any act of the acceptor, such as accelerating maturity whenever the holder 'deems himself insecure' (*Moyer* v. *Hyde,* 35 Idaho, 161 [28 A. L. R. 695, 204 Pac. 1068]; *First Nat. Bank* v. *McCartan,* 206 Iowa, 1036 [220 N. W. 364]), or upon the institution of suit or attachment proceedings against the maker or endorser (*Great Falls Nat. Bank* v. *Young,* 67 Mont. 328 [215 Pac. 651]). But as will be noted that is not the situation here. Therefore, it would appear that aside from the decision in *McCornick* v. *Gem State Oil & Products Co., supra,* there is ample authority to sustain the contention that accelerating clauses such as 'suffering a fire loss' and 'failure to meet at maturity any prior trade acceptances' are not destructive of negotiability.

"Appellant places much reliance also upon the case of *Great Falls Nat. Bank* v. *Young, supra,* but as will appear from the decision itself the contrary views therein expressed are based upon the published article above mentioned, and are not only incompatible with the legal principles enunciated by the supreme court of Idaho in the case of *McCornick* v. *Gem State Oil & Products Co., supra,* but are also in direct conflict with the established rule followed in the states of Oregon and Iowa. Further-

more the decision in the Montana case is somewhat questioned in the fourth edition of Brannan's Negotiable Instruments Law (p. 54); and the construction the supreme court of Montana places upon the term 'determinable future time', as used in the Uniform Negotiable Instrument Law (Civ. Code, subd. 3, sec. 3082, and subd. 2, sec. 3085) is evidently at variance with the one adopted by the Supreme Court of this state in the case of *Utah State Nat. Bank* v. *Smith, supra,* wherein it is said: 'A matter is determinable "that may be accurately found out, settled or decided" (Standard Dictionary); that is "capable of being determined, definitely ascertained, decided upon, or ended". (Webster's New International Dictionary.) A *future* determinable time could be one determinable at present, or in advance.' For the reasons stated we are of the opinion that the decision in the Montana case should not be followed in preference to the decision in the Idaho case.

"The language used in deciding the case of *Westlake Mercantile Corp.* v. *Merritt,* 204 Cal. 673 [61 A. L. R. 811, 269 Pac. 620], cited by appellant, has no application to the questions at issue here, because that case did not involve an acceleration clause. The instrument under consideration there contained no maturity date other than the provision: 'The obligation of the acceptor hereof arises out of the purchase from the drawer, *maturity being in conformity with the original terms of purchase*' (italics ours); and it was held in substance that the clause was more than a mere statement of the transaction which gave rise to the instrument, as is permitted by the Negotiable Instrument Law (subd. 2, sec. 3084, Civ. Code); and that pursuant to the italicized portion of the provision maturity of the instrument was made subject to the terms of an extrinsic contract of purchase, and that consequently negotiability was destroyed because the source of the acceptor's obligation to pay did not arise from the instrument itself, but grew out of a collateral transaction; in other words, that one of the principal elements of negotiability is certainty of payment, and that therefore since the italicized words rendered payment conditional or uncertain, they were destructive of negotiability. The instrument under consideration in the present case is not open to such objection, because it con-

tained an unconditional promise to pay the amount specified therein on February 12, 1925.

■ "Appellant further contends that respondent is estopped to assert any rights against appellant under said trade acceptance because of the failure of respondent at any time prior to August, 1925, to notify appellant of its claim to said trade acceptance. We find no merit in the point, for if, as held, the trade acceptance be negotiable, it was admittedly acquired for a valuable consideration prior to the maturity date thereof and also before the rescission of the sales contract pursuant to which the trade acceptance was given; and consequently under such circumstances there would seem to be no legal duty imposed upon respondent to notify appellant prior to the fixed maturity date of the instrument that it was the owner and holder thereof."

The judgment is affirmed.

Preston, J., Seawell, J., Shenk, J., Langdon, J., Waste, C. J., and Richards, J., concurred.