**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Richard F. COTTRELL aka R. F. Cottrell,**
**Defendant.**

**Civ. No. 8554.**

United States District Court
E. D. California.

July 16, 1968.

John P. Hyland, U. S. Atty., James H. Daffer, Asst. U. S. Atty., Sacramento, Cal., for plaintiff.

Crimmins, Kent, Bradley & Burns, San Francisco, Cal., for defendant.

## OPINION

EAST, District Judge.

In this action the plaintiff seeks to recover from the defendant as an endorser of the following written promissory note viz.

DEPARTMENT OF THE NAVY
BUREAU OF SHIPS
Washington 25, D. C.

JACKSONVILLE, FLA., 29 April 1955.

FOR VALUE RECEIVED, the Georgia Shipbuilding Corporation promises to pay to the order of the Treasurer of the United States the principal sum of Seventy-five Thousand Dollars ($75,000) in installments as hereinafter provided, and to pay interest on the unpaid balance of the principal sum as hereinafter provided at the rate of four (4) per centum per annum from the date hereof until final payment of the principal sum.

This note evidences an indebtedness incurred under and secured by Amendment No. 5 to Contract NObs–5626 dated 29 April 1955, between the United States of America (Department of the Navy) and the Georgia Shipbuilding Corporation.

The principal sum of this note shall be paid in installments together with interest on such installments and the unpaid balance as follows:

(here follows 7 future installment payments of principal in stated amounts plus accrued interest on unpaid balances at stated future times.)

Both the principal sum of the note and interest thereon shall be payable at Supervisor of Shipbuilding, Jacksonville, or at such other

place or places as may be designated by the Contracting Officer. Each payment of an installment of principal shall be noted on the back of this note.

This note shall be redeemable, in whole or in part, at the option of the undersigned, at any time before its maturity by payment of the unpaid balance of the principal sum hereof and the interest accrued thereon to date of payment. Any such prepayments of principal shall be applied to the payment of the said unpaid principal installments last to become due on this note and shall be noted on the back of this note.

On failure to meet installments as prescribed herein or in case of issuance of notice of default, as defined in Contract NObs–5626, the principal of this note may be declared and may become due and payable immediately upon written notice of the holder to the undersigned.

This note is issued for valid corporate purposes of the Corporation.

IN WITNESS WHEREOF, the Georgia Shipbuilding Corporation by its President has caused this note to be signed and its corporate seal to be hereunto fixed and attested by its Secretary all in the City of Jacksonville, Florida, as of the date hereof.

GEORGIA SHIPBUILDING CORP.,
By (S) R. F. COTTRELL, President

Attest:
[SEAL]                     (S) JOHN R. MACDONELL,
                                          Secretary.

Endorsers:                 (S) JOHN R. MACDONELL,
                           (S) JOHN R. MACDONELL,
                Executor for the Estate of Alex H. MacDonell.

(S) R. F. COTTRELL.

———◆———

The defendant concedes his endorsement of the Note together with the other named endorsers and the execution and delivery in due course by the named maker, Georgia Shipbuilding Corporation.

The plaintiff made a prima facie case by the production of the Note and the defendant came forward with his proof of alleged defenses.

It appears from the pre-trial order stipulations of the parties inter alia that:

On or about August 18, 1952 MacDonell Boats, a partnership consisting of John R. MacDonell, Alex H. MacDonell and Sidney J. Gefen, entered into a written contract with the United States for the construction of certain ships. (Contract) Thereafter the MacDonell partnership was incorporated as Georgia Shipbuilding Corporation, a Florida corporation which succeeded to the Contract under agreement with the plaintiff dated September 1, 1953. The defendant had been an employee of MacDonell Boats and held various officer positions of Georgia Shipbuilding Corporation.

The Contract was at all times under the administration of the Navy Department's Bureau of Ships and the September 1 agreement with plaintiff held the former MacDonell partners personally liable for the performance of the Contract.

Thereafter when the Contract was substantially completed Georgia Shipbuilding Corporation found itself in financial difficulties, involving lack of working capital and pressure from creditors on past due obligations to the extent that *its ability to complete the Contract was threatened* (Emphasis supplied) due to losses under the Contract in the estimated amount of $180,000 caused by late delivery of and errors and omissions in government furnished plans and specifications. It was apparent that in order to complete the Contract an unspecified additional amount would be required.

On March 10, 1955, Georgia Shipbuilding Corporation through the defendant as vice-president submitted to Navy Department's Bureau of Ships the following notarized advice:

"In response to your request we have determined by personal inquiry to each significant creditor of this Corporation that no action will be taken by our creditors which will prejudice the completion of * * * [the Contract] provided the Navy Board of Contract Adjustment enables the Corporation to complete the contract. It is our intention to use whatever funds are generated from other work (repairs, etc.) to reduce our trade obligations."

Then followed negotiations among various Navy departments and Georgia Shipbuilding Corporation culminating in a decision of Navy Cost Inspection Service (NCAB) on April 18, 1955 viz:

"Based on all the facts of the case, the Navy Contract Adjustment Board hereby authorizes an amendment increasing the price of contract NObs 5625 * * * in the total amount of $68,551, said price increases to be administered by means of and through the existing advance payment controlled account. * * *

"In consideration of the said increase in contract price, the corporate contractor and the individual guarantors shall acknowledge themselves indebted to the United States, severally and jointly, in the amount of the said $68,551. * * *

"The Board finds its action in this case will facilitate the national defense."

Thereupon Navy Department's Bureau of Ships drafted an amendment—5 to the Contract under date of April 21, 1955 providing inter alia that the total contract price of the contract be "increased by $68,551.00", procedures for the establishment of a controlled account and withdrawals therefrom with the proviso—*"that such withdrawals shall be limited to the payment of costs which are incurred from and after the date of this amendment 5."* And further, that any remaining balance in the controlled account "shall revert to the government and shall be credited against the note to be furnished under the terms of this amendment." (Italics added.)

The April 21 draft was not executed and under date of April 29, 1955, Navy Department's Bureau of Ships redrafted amendment 5 changing the contract price increase to $75,000, omitting the above italicized words from the provisions as to withdrawals from the controlled account and provided only that

"Withdrawals from said account shall be in accordance with the terms and conditions of the 'Use of Funds' Clause (3) and (14) (d) [1] of the Advance Payment Agreement; provided that any balance remaining in said account upon the completion of Contract NObs–5626 shall revert to the Government and shall be *credited against the note to be furnished under the terms of this amendment*, as hereinafter described. (Emphasis supplied)

[1]. Compare Navy Department's Bureau of Ships interpretation "Use of Funds" clause in its hereinafter mentioned letter of May 12, 1955 with the above underlined provision omitted from the April 29 draft.

The April 29 draft further provided inter alia that Georgia Shipbuilding Corporation acknowledged itself indebted to the United States in the amount of said $75,000 in addition to the then indebtedness outstanding and owed to the United States, and set forth a schedule of repayment thereof. Further, such increased indebtedness shall be evidenced by the note attached hereto (the above described promissory note) executed by the Corporation with endorsements as indicated thereon. "The covenants, representations and warranties under the advance payment provisions shall continue under and be extended to the note."

The April 29 draft of Amendment 5 was executed by plaintiff and Georgia Shipbuilding Corporation. The note was executed and delivered by Georgia Shipbuilding Corporation as maker and the defendant as one of the endorsers on the note as of April 29, 1955.

Plaintiff thereupon deposited $75,000 in the controlled account as established under Amendment 5. Thereafter Georgia Shipbuilding Corporation made two requests for withdrawals covering in part expenses incurred on the Contract prior to March 1, 1955. *Both requests were granted.*

By letter dated May 12, 1955, Navy Department's Bureau of Ships issued certain instructions with regard to withdrawals from the controlled account while acknowledging that the "Use of Funds Clause" referred to in the Amendment 5 permitted "withdrawals for Contract costs regardless of the period within which they were incurred"; nevertheless instructed that "inasmuch as the $75,000 (the increase of the price of Contract) is predicted principally on cash run-out costs as of first March, 1955, except for certain—taxes—insurance premiums, it is necessary that some limitations be placed at this time on future withdrawals from the advance controlled account—." These instructions admonished "that withdrawals from said account shall be limited to each run-out costs as of 1 March 1955, except for" certain taxes and insurance premiums.

This unilateral change of position by Navy Department's Bureau of Ships under the letter of May 12 was protested by Georgia Shipbuilding Corporation through its letter of May 26, 1955. By letter of June 12, 1955 the defendant renounced his "guarantee" of the note. However, under threats by Navy Department's Bureau of Ships that unless Georgia Shipbuilding Corporation's protest and the defendant's renunciation were withdrawn no further funds could be withdrawn from the controlled account, whereupon both Georgia Shipbuilding Corporation and the defendant complied.

As Chief Judge Chambers so aptly wrote—"the government also must turn square corners."

By June 22, 1955, Georgia Shipbuilding Corporation had ceased all work on the Contract by reason of lack of funds. On July 15, 1955, plaintiff declared the Contract in default and terminated the same. At that time there were two ships to be completed which were 91% and 98% physically completed, respectively, (pre-trial order stipulation).

Georgia Shipbuilding Corporation foundered on a discharge in bankruptcy.

On July 19, 1955, plaintiff invoked the acceleration clause in the Note and advised the defendant that if Georgia Shipbuilding Corporation were to fail to pay the same "plaintiff would look to him for satisfaction as an endorser thereof; no date therefor was specified."

■■ I find and conclude that any and all indebtedness and obligation on the part of Georgia Shipbuilding Corporation to repay the mentioned $75,000 under the Amendment 5 merged into the indebtedness evidenced by the Note. It is manifestly hornbook that *if* the plaintiff held *two* written evidences for one and the same principal's indebtedness, i. e. Amendment—5 and the Note, it must elect upon which one of the two evidences is seeks to recover. Accordingly, the plaintiff by seeking recovery from the defendant as an endorser of the Note acknowledged either that the indebted-

ness of Georgia Shipbuilding Corporation under Amendment—5 merged in the indebtedness of Georgia Shipbuilding Corporation under the Note, or it has elected to seek recovery upon the Note rather than upon the terms of Amendment—5.

Turning now to the seven alleged affirmative defenses by the defendant I conclude that only the second, dealing with an alleged failure of consideration for the Note and to defendant as endorser, and the fifth and sixth dealing with the negotiability or non-negotiability of the note and an innuendo defense that the plaintiff did not rely upon the defendant's endorsement in making the increased price of $75,000.00 are meritorious.

■ As for the second affirmative defense, I find and conclude that the same is not tenable. Georgia Shipbuilding Corporation had a most primary interest in seeing that it completed the Contract. The plaintiff did advance the $75,000, and if all had worked out Georgia Shipbuilding Corporation would have received substantial monetary benefits. By the same rationale the defendant as a stockholder of Georgia Shipbuilding Corporation would have gained monetary benefit.

■ Subsequent default, if any, by plaintiff in its obligations under Amendment—5 might be a defense to an action on the Note and defendant's endorsement (not now considering negotiability of the note) on the basis of a failure of consideration. However, it can not be said from the record in this cause that Navy Department's Bureau of Ships unilateral change of and deviation from the Amendment—5 as to withdrawals was the cause of the breakdown of the program and Georgia Shipbuilding Corporation's failure to complete the Contract.

The defendant also urges that his reason for endorsing the Note was to show "good faith" and to indicate that as president of Georgia Shipbuilding Corporation he would use his best efforts to put the $75,000 to its best use and

Georgia Shipbuilding Corporation would take all possible steps to carry out the Contract. This position takes on much, if not conclusive, credence in view of the pre-trial order stipulation of the parties viz:

23. Plaintiff accepted such endorsement as evidence of "good faith" on the part of defendant, but did not rely thereon in executing the Amendment and advancing funds thereunder.

I would be content to resolve this matter in favor of the defendant on this basis alone as the Government can not blow hot and cold. However, I feel that the resolve of the issue of negotiability of the Note should be of most importance and the Court should deal with that issue.

The defendant's sole obligation to plaintiff, if any, is by virtue of being an endorser of the Note, which is a negotiable instrument. Further, that since (pre-trial order stipulations 40 and 41) no presentment for payment of the note was ever made to Georgia Shipbuilding Corporation, nor was any Notice given to defendant at any time nor was presentment of the Note for payment ever made to him, he has been completely discharged as an endorser. The plaintiff concedes that if the Note is a negotiable instrument, which I have found it to be, the defendant has been discharged and has a complete defense.

■■ The test of negotiability is not whether the plaintiff did negotiate or transfer the Notice but whether the Note could have been negotiated by the plaintiff to a holder in due course upon its face. A perusal of the Note reveals that it is a conventional type of an installment payment negotiable instrument. The face of the Note refers to two extrinsic agreements, one, to Amendment—5, a statement as to the source of the indebtedness, consideration and security and secondly, to the Contract as a basis for utilizing the acceleration clause "in case of issuance of notice of default—."

It would serve no purpose to recite the commonly known requisites of a negoti-

able instrument under the provisions of the Negotiable Instrument Act, Sec. 1. Sufficient to say, I find and conclude that the Note meets and satisfies the requirements of Section 1, supra, as interpreted by N.I.L. Sec. 2(1) and (2), Sec. 3(2) and the case law.

In the Note, Georgia Shipbuilding Corporation's promise to pay is unconditional and the "sum of money" is certain. The fact that the "sum of money" and interest is payable in certain time installments does not render it uncertain. Sec. 2(1) and (2) supra.

While analyzing the effect of the reference to the two extrinsic agreements upon the negotiability of the Note we must keep in mind that the plaintiff drafted the Note and the defendant is entitled to have the Note construed most strictly against the plaintiff and "least burdensome to him." W. H. Armstrong & Co. v. United States, 98 Ct.Cl. 519 (1943)

A reference in a note to an extrinsic agreement does not destroy negotiability unless the reference actually makes the note "subject to" the terms of that agreement. See cases collected in 104 A.L.R. 1378, 1382.

The Note refers to Amendment—5 as to (a) the source of indebtedness and consideration and (b) security.

a. Sec. 3 supra,

"An unqualified order or promise to pay is not unconditional within the meaning of this Act though coupled with

"(2) A statement of the transaction which gives rise to the instrument."

b. the greater weight of authority is to the effect that reference to an agreement providing security or collateral does not destroy negotiability under the Negotiable Instruments Law. Marine National Exchange Bank v. Kalt-Zimmers Mfg. Co., 293 U.S. 357, 55 S.Ct. 226 (1934); Page v. Ford, 65 Or. 450, 131 P. 1013, 1016–20 (1913).

This is so even though the security agreement may require the maker to do many acts other than the payment of money, i. e., covenants in a mortgage. Williamson v. Craig, 204 Iowa 555, 215 N.W. 664 (1927)

Acceleration clauses for default in timely payment of installments of principal and interest are so universally held not to render the promissory note non-negotiable as to need no comment by me. This is also true where the default giving rise to acceleration is a failure to comply with an extrinsic agreement particularly when as here acceleration is optional with the holder of the Note. People's Finance & Thrift Co. v. Shaw-Leahy Co., 214 Cal. 108, 3 P.2d 1012 (1931); Tower Grove Bank & Trust Co. v. Duing, 346 Mo. 896, 144 S.W.2d 69 (Mo.1940).

With the Note in the hands of a b. f. p. the option to accelerate by reason of a default under the Contract becomes surplusage. In the hands of the original payee it is operative. A note is payable at a "time certain" for purposes of the N.I.L. if it is payable on or before a fixed future date as it is in the instant, and a contingency under which the note may become due earlier is not one that affects its negotiability bearing in mind that acceleration by reason of any stated contingency is an option in favor of the holder of the note rather than a contingency that affects the unconditional promise to pay at a fixed future time a certain sum of money on the part of the maker. See Enoch v. Brandon, 249 N.Y. 263, 164 N.E. 45, 48 (N.Y.1928), Chicago Ry. Equip. Co. v. Merchants National Bank, 136 U.S. 268, 285, 10 S.Ct. 999, 34 L.Ed. 349 (1890).

Accordingly I hold that plaintiff's cause herein against the defendant should be dismissed with prejudice and that defendant have appropriate judgment.

This opinion shall constitute and stand as the Court's findings of fact and conclusions of law as proscribed by Rule 52 (a), Federal Rules of Civil Procedure.

Having disposed of this cause as above, it is not necessary to consider the defendant's asserted defense of collateral

estoppel against the plaintiff by reason of a favorable verdict to Gefen in the cause of United States v. Gefen (one of the partners of MacDonell Boats). However, I would suggest that in the Gefen case the Government sought recovery upon a completely different contract, namely, as a guarantor of the Contract dated September 1, 1953 above referred to, than the Note.

Counsel for the defendant is requested to present appropriate judgment order.