ALBERT E. WHITNEY, Respondent, *v.* CHRISTOPHER W. BIGGS, Appellant.

(County Court, Chemung County, November, 1915.)

Contracts — interest of vendee in property sold — sales — when contract not contrary to public policy — principal and agent.
Automobiles — sale of car — assignment of all interest in title — executions — when plaintiff entitled to maintain action against sheriff.

The interest of a vendee in property sold under a contract of conditional sale is not subject to levy and sale under an execution issued upon a judgment against him.

Where plaintiff became the agent of an automobile company to sell its cars at list price plus freight, his commission to be fifteen per cent. of the list price, the transaction did not amount to a sale to plaintiff at eighty-five per cent of the list price.

Such a contract is not contrary to public policy and the agent did not acquire full and complete title to the cars sold through him because in the agency agreement the automobile company restricted the sale of its cars at less than the list price.

Plaintiff, as agent, sold a car to one U and took from him the required buyer's order and agreement, approved and accepted by the automobile company and plaintiff, by which U agreed that the title to the car should remain in the automobile company until paid for. At a time when a balance was due from U upon the purchase price the company assigned all its right and interest in the car to plaintiff and thereafter the sheriff levied upon the car and sold it under an execution issued on a judgment obtained against U. It also appeared that plaintiff forbade the sale of the car by the sheriff under the execution and demanded the return of the car and possession thereof. Held, that plaintiff was entitled to maintain an action against the sheriff for the amount of the unpaid purchase price of the car which was due at the time of the assignment to him of the automobile company's rights.

APPEAL from a judgment entered in the City Court of Elmira on the 18th day of March, 1915, in favor of the plaintiff and against the defendant, for the sum of $195.70 and interest.

The defendant appeals to this court and asks that the judgment be reversed as being contrary to law and against the evidence.

This action was brought by the plaintiff to recover of the defendant, as sheriff of the county of Chemung, the sum of $195.70, which was, as plaintiff claims, the amount of his interest in a Ford automobile which the defendant, as sheriff, had sold under an execution issued on a judgment against one Joseph Updike.

The plaintiff was the agent in the city of Elmira and the surrounding territory of the Ford Motor Com-

pany.  He was doing business under the name and style of "The Elmira Ford Company." The plaintiff's agreement with the Ford Motor Company was in writing and was styled a "limited agency contract." By this contract the plaintiff agreed not to sell automobiles for less than their list price; that such sales would be made by him as agent for the Ford Motor Company; that he would not make sales outside of his territory as designated in the contract; that he should advance in cash the sum of 85 per cent. of the full advertised list price of each automobile at the time of its consignment to him; that requisition by him for consignments of Ford automobiles should be made upon requisition blanks furnished by the Ford Motor Company; that he should advance and pay the freight on all automobiles; that the Ford Motor Company should retain all and complete title to each automobile until actual bill of sale, signed and executed by it, or one of its factory branch managers, had been delivered by it to the purchaser of such automobile from the plaintiff; that any attempt by the plaintiff to sell or dispose of or deliver any Ford automobile at less than list price plus freight and delivery charges should be utterly void and should pass no title whatsoever; that the plaintiff would not give any rebates or donations or drawbacks of any character whatsoever to any purchaser; that the plaintiff should have a lien on each automobile for the 85 per cent. advanced by him on the same and for freights paid by him and that he should keep and maintain insurance so as to protect himself against loss; that the plaintiff should take from each proposed purchaser of a Ford car, and immediately forward to the Ford Company, a written order, duly signed by him upon the regular blank "buyer's order," furnished by the company, without alterations or changes, and that he would make no arrangement for a sale of

a Ford automobile without taking such written signed order; that all deposits of money on the purchase price of automobiles made by buyers from the plaintiff as such agent should be remitted immediately by him when received, with the buyer's order, to the Ford Company, who was to be the custodian thereof and make proper disposition thereof when the transaction was closed, according to the rights of all the parties; that the dealings of the plaintiff with a proposed purchaser of an automobile should not constitute a sale and the proposed purchaser should acquire no title whatever in the automobile until the delivery of a duly executed bill of sale; that the plaintiff should report each week to the Ford Company all automobiles contracted for by him with purchasers under his agreement; that the plaintiff's commission for making sales of Ford automobiles should be 15 per cent. of the full advertised list price, to be paid by the Ford Company after payment of the full purchase price by the purchaser. The limited agency contract contains many other stipulations, but the foregoing are the principal ones so far as this litigation is concerned.

On or about the 11th day of December, 1913, the plaintiff, as such agent, sold a Ford automobile to one Joseph Updike for the full list price, plus the freight, and took from Updike the required " buyer's order and agreement," executed by him on that date, also approved and accepted by Ford Motor Company and by Elmira Ford Company by A. E. Whitney. The terms of payment were not filled in in this buyer's order, but it appears from the evidence that Updike was to pay for the same in monthly payments of fifty dollars each. This order was executed in three parts, one forwarded to the Ford Motor Company, one held by the plaintiff and one by the said Updike. This order provided that the legal title to said automobile delivered to Updike

under the agreement should be and remain in the Ford Motor Company until the full purchase price thereof should be paid to it, and the Ford Motor Company was vested with full authority, in case of default in payment of any of the said purchase price by Updike, to retake the automobile, with or without process of law, etc. The order and agreement also provided, "this order is given by me subject to acceptance and no title to said automobile shall pass to me except or until bill of sale executed by the company itself, or by one of its executive officers, or by one of its factory branch managers, has been delivered to me."

Attached to said order was a bill of sale executed by the Ford Motor Company to Updike, describing said automobile by number and reciting the full purchase price, and also reciting that " This bill of sale is made on the understanding that no title shall pass until payment is made by second party to the first party (Ford Motor Company) of the full advertised list price plus freight and delivery charges of said automobile." This bill of sale was not delivered to Updike.

It appears that Updike paid, prior to September 12, 1914, $364.65 on the purchase price, leaving a balance due at that time of $195.70. On that date the company wrote to the plaintiff, as follows:

" Referring to our conversation on sale of the Joseph Updike car;

" We transfer to you all of our right and interest in this car. We would suggest that you hold ' Buyer's Order and bill of sale until the purchaser pays the balance due you on your contract.' "

It appears that Updike had possession of the automobile from the date of the execution by him of the buyer's order and agreement on December 11, 1913.

On or about the 11th day of December, 1914, the defendant, as sheriff, levied upon the automobile and

sold it under an execution issued on a judgment obtained against Updike.

On the trial it was stipulated that the plaintiff forbade the sale of the car by the sheriff under the execution and demanded the return of the car and possession of it. It does not appear for how much the car was sold by the sheriff, but it does appear that its value was $300.

Baldwin & Allison, for appellant.

Harry H. Hays, for respondent.

SWARTWOOD, J.   The whole contention of the appellant here seems to be that at the time the sheriff levied on and sold the Ford automobile it was the property of Updike, his claim being that Whitney having paid to the Ford Company all that it was to receive from him in money, as its agent, he became the absolute owner of the car, and that, when he made the sale to Updike, Updike received the full title from him and that the assignment of the Ford Motor Company to Whitney passed nothing to him for the reason that at that time it had no interest in the car. The appellant's further claim is that the execution of the buyer's order and agreement by Updike back to the Ford Company was inoperative for the purpose of retaining or vesting in the Ford Motor Company the title to the car. This argument, of course, overlooks the fact that Whitney as the agent of the Ford Motor Company owed it a duty in addition to the money consideration.

To agree with the appellant's contention would be to hold that the agency contract between Whitney and the company was void and of no effect, and also that the buyer's order and agreement entered into between the Ford Motor Company, Whitney and Updike was

void and of no effect. The appellant does not give any reason why these agreements were void other than that already stated.

The appellant's counsel in their brief state " The test in this case is, could the Ford Motor Company after payment by plaintiff of eighty-five per cent. of the list price of this car, and before the sale to Updike, have taken the car under its *lien* from the plaintiff in this action, claiming that the balance of fifteen per cent was due it from Whitney? " This question should, I believe, be answered in the affirmative for the reason that the Ford Motor Company did not claim a *lien* on the car for the fifteen per cent. merely, but claimed that it held the title to the car until Whitney and his conditional vendee had fully performed their agreements. The Ford Motor Company could, therefore, require performance of both Whitney's and Updike's agreements, not only as to the payment of the full purchase price of the car, but as to the other conditions on which the sale was made.

By the agency contract between the Ford Motor Company and Whitney, Whitney became the agent of the Ford Company in a certain specified territory for the purpose of selling its cars at list price plus the freight. His commission for making such sale was fifteen per cent. of the list price of each car. At the time of ordering cars they were delivered to him by the Ford Motor Company under the terms of contract *for sale and delivery as its agents.*

The transaction did not amount to a sale to Whitney at eighty-five per cent of the list price. By the terms of the agency agreement, the Ford Company restricted the sale of its cars by its agent at less than the list price, and to hold that the agent acquired a full and complete title to the cars would be tantamount to holding that the Ford Motor Company could not make a

valid agreement with its agent fixing the price at which he should sell them, and therefore an unjustifiable interference with its right to contract. This agency contract is not against public policy, nor can it be condemned on any other ground. Whitney was not buying the cars from the Ford Company. If he were, he would be in the position of a user and by his agency contract would be obliged to pay the list price, and he could not resort to the subterfuge of obtaining an agency contract for the purpose of obtaining a car for his own use at eighty-five per cent of its list price. It must be presumed that Whitney entered into his agency contract with the Ford Motor Company in good faith. The Personal Property Law of New York contemplates that the ownership of chattels is to remain in the conditional vendor or in a person other than the conditional vendee until they are paid for or until the occurrence of a future event or contingency.

The case of *Ford Motor Company* v. *International Automobile League,* 209 Fed. Rep. 235, relied on by the appellant, does not hold that the Ford Motor Company cannot enforce its contract with its agents and fix the price at which its cars shall be sold by them to users. That case holds that the Ford Motor Company cannot control the price of a car after it has passed into the hands of a third party or user, who has bought it from an agent and paid the full purchase price therefor. Such is not the situation here.

Updike, who had bought this car and signed the buyer's order and agreement and agreed to pay for the car at the rate of fifty dollars per month, *had not paid for it* and the car remained unpaid for on the date the sheriff sold it under his levy. The Ford Motor Company had accepted the terms of sale by Whitney to Updike and Updike had agreed, in writing, that the title to the property should remain in the Ford Motor

Company until he had paid for the car. Whitney had agreed that the title should remain in the Ford Company, not only by his agency contract but by the buyer's order and agreement signed by Updike at the solicitation of Whitney and accepted by him.

Whitney is not here asserting title as against the Ford Company and Updike cannot assert title until he has paid the purchase price. Neither can any judgment creditor claim a title for him that he does not possess.

The agency contract in express terms protected Whitney for the advance of eighty-five per cent of the list price of the car by providing that he should have a lien on it for that amount, but he could not receive title to the car from the Ford Motor Company until he had complied with the other conditions of his contract. The selling of the car to Updike and requiring that he execute the regular form " buyer's order and agreement " agreeing that the title should remain in the Ford Motor Company until the car should be paid for were acts of Whitney in the performance of his contract with the Ford Motor Company and he is bound by his acts.

It, therefore, follows that the title to the car remained in the Ford Motor Company until it assigned all its rights therein to the plaintiff on September 12, 1914, at which time the plaintiff became the owner and holder of the legal title to the car. A decision in accord with the defendant's position would enable a person who had a judgment standing against him to get possession of a car in consideration of a small payment and at once have the car sold on an execution issued on the judgment. Such a holding would indeed be " perilous to the innocent and a temptation to the wicked." The law seems to be settled that the interest of a vendee in property sold under a conditional sale agreement is not subject to levy and sale on execution

issued on a judgment against him. *Friedman* v. *Phillips,* 84 App. Div. 179. The plaintiff having forbade the sale by the sheriff may, of course, maintain this action. It does not appear for how much the car was sold, but it is not the intenton by this decision to hold that the difference in the amount claimed by Whitney may not be reached by proper proceedings against Updike.

Judgment affirmed, with costs.