MAX HEIMAN, Plaintiff, *v.* JOSEPH J. MURPHY, Defendant.

Municipal Court of New York, Borough of Manhattan, Seventh District, March 11, 1932.

*Abraham Kaplan,* for the plaintiff.

*Karl A. Blaustein,* for the defendant.

LEWIS, DAVID C., J.   On the 18th day of May, 1931, in New Jersey, Joseph J. Murphy signed certain papers in connection with the proposed conditional sale and delivery to him by Don Hugell, doing business as Don Motor Sales, of one Pontiac car.

The defendant asserts that when he penned his name to the papers he was led to believe that the writings constituted reference information and other data preliminary to the passing of his credit.

It now appears that the papers constituted a printed, complete conditional sale agreement (in which the delivery of the auto

to and its receipt by the vendee is recited) with a promissory note appended. One paper readily detached from the other by tearing along a printed perforated line.

Though these writings were signed, there never was either a delivery or tender of delivery of the auto.

And a short time following defendant's signature to the papers the defendant communicated with Don Hugell and thereupon with his consent called off the deal, the defendant then considering the matter a closed chapter.

When the first installment, called for by the contract and also by the note, became due, it was not paid. Then it was for the first time that the defendant became apprised of the real nature of the documents signed by him and learned of their transfer to the Liberty Credit Corporation. The Liberty Credit Corporation demanded payment from this defendant. To its disappointment, the defendant expressed surprise, and, explaining his side of the story, refused payment.

And it then developed that Don Hugell, concealing that there had been no delivery of the Pontiac, or that there had been a cancellation or rescission of the transaction, had transferred the entire writing (the conditional sale agreement and the appended note) to Liberty Credit Corporation; which purchased all his rights, title and interest.

The court believes the Liberty Credit Corporation and defendant acted in good faith; but unfortunately this cannot be said for Don Hugell. Both sides assert that Don Hugell, for obvious reasons, has become a fugitive from justice.

The Liberty Credit Corporation thereafter assigned the note to the plaintiff and still stands as the assignee of the conditional vendor of the Pontiac.

The plaintiff, to whom the Liberty Credit Corporation assigned the note for suit, now sues on the note — not the conditional sale contract. And on the theory that he has succeeded to the rights of a holder in due course of a negotiable note, he disputes the right or privilege of the defendant to assert his defense.

Unless the note is a negotiable instrument and came into the hands of a *bona fide* holder in due course, the indebtedness represented by it is simply an installment due on the conditional sale contract and recourse should be restricted to the available remedies to enforce such an agreement.

In such actions the vendee would have the right to interpose any defense properly available to him under the contract, as against the vendor or his assignee.

The Liberty Credit Corporation does not dispute *that it purchased*

*and secured the contract and the note at one and the same time for one and the same consideration.*

It is neither a secret nor speculation that a finance corporation would not have bought the promissory note from the Don Motor Sales without securing the accompanying conditional sale agreement.

When the Liberty Credit Corporation took over this transaction, did it acquire a conditional sale agreement with the accompanying note as a means of payment — not payment; or did it become possessed of a negotiable note secured by the conditional bill of sale?

The nature and essence of a conditional sale contributes enlightenment upon the question.

Until the payment of the note given for the stipulated price, the transaction constitutes nothing more than an *executory* contract of sale.

The conditional vendor (the payee of the note) retains title to the property until the contract price is paid, and until then the conditional vendee acquires neither any title to the property nor any leviable interest in it. (*Baker* v. *Hull*, 250 N. Y. 484, at p. 486; *Herring* v. *Hoppock*, 15 id. 409; *Whitney* v. *Biggs*, 92 Misc. 424, 432.)

At the inception of the transaction the conditional sale contract constituted the main and primary agreement; the note was only incidental and secondary to it; the obligations of the conditional vendor under this executory contract of conditional sale were the only considerations for the note of the conditional vendee.

Through what make-believe process or legal fiction can we completely reverse the relationship; make the note the primary and principal obligation, and at the same time preserve the conditional sale contract in all its virgin rigor, for the full advantage of the vendor, yet only as collateral for the note?

If the condition (*reservation of title in the vendor*) survives, the note cannot be regarded as full payment of the purchase price.

It may well be that were the note to be independently negotiated and completely separated from the contract, and treated as in full payment of the purchase price, then the note might be absolutely divorced from the conditional sale agreement and the original relationship between the two would no longer exist. But neither would the conditional sale contract remain an executory agreement. The acceptance of the note as payment of the purchase price would extinguish the original transaction and leave suit upon the note the sole remedy of the seller.

Under such circumstances, the executory contract to sell would then become an executed contract of sale; the purchase price being

paid, the title would pass; and the promissory note would remain as the outstanding debt of the vendee.

The plaintiff and his assignor now have possession of both the conditional sale contract and the note, claiming each and all of the rights available under both instruments; though this plaintiff sues only as the assignee of the note.

While there is nothing to prohibit the conditional vendor or its assignee from pursuing one course or the other, both cannot be pursued at once. Neither the conditional vendor nor his assignee can eat his cake and still have it.

If the conditional sale contract survives as an executory contract, then this plaintiff finds itself no more comfortable or secure than his predecessor. And though, as assignee, he may not elect to follow in the footsteps, still he stands in the shoes of his assignor.

In the instant case we are spared the necessity of resting upon any election. For in this instance there never being any delivery or tender of delivery of the personal property on the part of the original conditional vendor to the conditional vendee, but instead a cancellation and rescission of the conditional sale contract, all obligations under the conditional sale contract abated. The vendor retained no debt to transfer to his assignee for collection; and there remained no obligation of the vendee to pay.

" The relation between the parties being that of conditional vendor and conditional vendee, plaintiff cannot after asserting his title to the property in question and taking the same from the defendant's possession and selling the same, recover the purchase price thereof. (*Earle* v. *Robinson*, 91 Hun, 363; affd., 157 N. Y. 683, on opinion below; *White* v. *Gray's Sons*, 96 App. Div. 154.) Plaintiff cannot disaffirm the contract of sale, take and keep his property, and at the same time require the defendant to pay therefor. Neither could he sell the property and apply the proceeds of such sale on the promissory notes of the defendant. That was attempted in *Earle* v. *Robinson* (*supra*), but it was held that there was a failure of consideration and the whole original indebtedness was wiped out by the action of the creditor." (*Cooper* v. *Payne*, 111 App. Div. 785; affd., 190 N. Y. 512.)

" Retaking the property would constitute a rescission of the sale and prevent a recovery of a judgment for any balance due." (*Ohl & Co.* v. *Standard Steel*, 179 App. Div. 637, at p. 644.) (See, also, *Nelson* v. *Gibson*, 143 id. 894, at p. 898; *Van Derveer* v. *Canzono*, 206 id. 130; *Earle* v. *Robinson*, 157 N. Y. 683; *Edmead* v. *Anderson*, 118 App. Div. 16.)

It follows that unless the plaintiff possesses a negotiable instrument, he is out of court; regardless of his good faith, and irrespective

of what may be the common practice in any commercial finance sphere.

The question of the negotiability of this note leads to a review of the printed forms constituting the basis and origin of the transaction; and of their inception, and subsequent disposition and treatment.

These printed forms, contained on a single sheet, are the prepared products of the Liberty Credit Corporation. These papers are headed " Original Conditional Sale Contract."

At the top, immediately under the quoted title, we find printed in small italicized type: " It is hereby agreed that immediately upon completion of payments there will be delivered to the purchaser a regular bill of sale in conformity with Chapter 168 P. L. 1919, New Jersey Statutes."

The name of the Liberty Credit Corporation is printed in the body of the original conditional sale contract, and also appears in large printed type in the promissory note appended to it.

On the back of the conditional sale contract appears a printed formal assignment: " to the Liberty Credit Corporation of the within Conditional Sale Contract together with *all the rights, title and interest of the undersigned therein and thereto, and in and to the motor vehicle,*" etc. (Italics mine.)

As previously indicated, the note is printed at the bottom of the contract proper, separated from the conditional sale text by an indented line, indicating the place for detachment.

And on the back of the note is inscribed a guaranty of payment with waiver of presentment for payment, demand, protest, and notice of protest and non-payment.

It seems that the law has not evolved or adopted any single commonly accepted all-inclusive formula as the sole test or arbiter of negotiability.

The divergence in opinion as to what clauses may be added to the essential terms of a negotiable instrument, without rendering it non-negotiable, italicizes the uncertainty in this field of the law.

The Negotiable Instruments Law sounds plain and positive. The perplexity comes not from the statute; it is born of its application.

" The rule itself is not a difficult one. The trouble, as often happens, lies in its application to particular facts. There is no infallible test as to whether there is a modification of the promise. Because of the difference in the words used, or in the arrangement of paragraphs, sentences or clauses, each instrument must be interpreted by itself. Only then may we solve the question as to its character." (*Enoch* v. *Branden,* 249 N. Y. 263, at p. 267.)

The Negotiable Instrument Law demands an absolute unconditional promise to pay. However, one cannot guarantee negotiability by merely stipulating in the instrument that it is negotiable.

" But no such statement will make negotiable a bond not in the form provided by our statute." (*Enoch* v. *Branden, supra,* at p. 266.)

To meet the statutory requirements, judicial interpretation exacts an unconditional pledging of the general credit of the maker or drawer.

So that if the rights of a holder of a promissory note to enforce or collect the obligation, are subject to defeat or denial by any action within *the exclusive power of some other independent party, the promise cannot be said to be unconditional.*

The title to the property and the corresponding rights to retake it, and/or rescind or terminate the contract resided exclusively in the holder of the conditional sale contract; and they traveled with its transfer, not with the negotiation of the note.

The obligation of the vendee to pay, as well as the ultimate amount and also the due date, were made contingent upon the possible exercise of these exclusive rights of the conditional vendor or his assignee of the conditional sale agreement.

If the note by its provisions gave notice of these facts and circumstances, its negotiability was destroyed.

" If, however, these *coupons contained notice to the holders of any facts* or circumstances showing that the time of every payment was subject to a contingency over which the holder had no control, and which might postpone every payment indefinitely, then they could not be said to be *bona fide* holders thereof as negotiability of the paper would thereby be destroyed." (*McClelland* v. *Norfolk Southern Ry.,* 110 N. Y. 469, at p. 475.)

" I am also of the opinion that the court did not err in finding that the defense of return available to the buyer under the contract was a defense as against the * * * indorsee * * *. I base this conclusion on the evidence produced on the trial to the effect that the notes sued on in this action contained the following: ' This note secured by a chattel mortgage,' and that such verbiage was sufficient to put the plaintiff, in taking such notes, upon notice of any defense to the payment thereof, which the giver of such note would have by reason of the provisions of the so-called chattel mortgage therein referred to, which chattel mortgage was evidently the conditional contract of sale above referred to." (*Securities Investment Co.* v. *Maxwell,* 131 Misc. 160; affd., 224 App. Div. 872.)

It may be argued that the statute expressly allows reference in

the instrument to the transaction of origin and also to the security. (See Neg. Inst. Law, §§ 22, 24.)

In construing the privileges allowed by these provisions of the Negotiable Instruments Law difficulty is found in deciding the legal effect of the particular means or manner of reference employed.

Grammar, syntax and context have played a part in the reasoning of the courts in ruling on this question.

The crux of some of the cases is whether the matter would merely constitute reference to a document *providing security in aid of payment and simply prescribing the method to pursue in enforcing the same.* (*Hibbs* v. *Brown*, 190 N. Y. 167; *Enoch* v. *Branden, supra*, at pp. 267, 268.)

The cases cited also sanction the principle that it is the instrument — the bond or the note — not the other document, that determines negotiability.

The language in the note in question reads: " If any instalment of this note is not paid at the time, manner and place specified herein and /or *as provided in the conditional sale contract executed herewith*, the entire amount unpaid shall become due and payable forthwith at the election of the holder of the note." (Plaintiff's Exhibit A.)

This, I take it, distinctly constitutes not merely a reference but incorporates the terms provided in the conditional sale contract as a term of the note.

Were one to consider only the wording, would he be warranted in construing it as merely indicating the transaction of origin, when the language expressly incorporates the terms of another document.

A leading case on the problem is that of *Old Colony Trust Co.* v. *Stumpel* (126 Misc. 375). There the Court of Appeals (affirming the lower courts), interpreting the following clause, " The within notes is subject to the terms of a conditional sales agreement executed by the maker thereof upon this date " leaves us content with the terse comment: " Judgment affirmed, with costs, upon the ground that the provision in the note to the effect that it is subject to the terms of another agreement not attached thereto makes the promise of payment one that is not absolute on its face and thus destroys negotiability." (See *Old Colony Trust Co.* v. *Stumpel, supra*, at p. 379.)

An examination of the record in that case does not disclose that the original conditional sale agreement was ever transferred by the conditional vendor; apparently it was not. The notes alone were pledged as collateral for an antecedent debt. And an examination of the decision at Trial Term reveals that there the court rested

its claim of *non-negotiability, solely upon the fact that the conditional sale agreement gave to the conditional vendor the right to demand payment if at any time he deemed the said contract or the said debt unsafe or unsecure;* holding that such a provision travelled beyond the ordinary default and acceleration clauses,— that it *rendered the time of payment uncertain,* and that the provisions appearing in the printed clause on the back of the note: " This note * * * is subject to all the terms and conditions of such mortgage " made the terms of the conditional sale agreement (mortgage) referred to applicable to the note and destroyed its claim to negotiability.

The conditional sale contract now before this court expressly provides: " * * * *and if the Seller shall feel itself insecure or unsafe,* or shall fear diminution, removal or waste of said property, or if the Purchaser shall attempt to sell or assign the said goods and chattels without a written consent of the Seller, and, or if, any writ or warrant shall be levied on same, *then the whole of the unpaid portion of said purchase price, with interest, shall become* due and payable at the option of the Seller."

" In no reported case has a clause accelerating maturity if the holder deems himself insecure been held negotiable, though a few states have gone as far as to hold negotiable notes with clauses accelerating maturity upon insolvency of the maker or attachment of the property securing the note. (*McCornick & Co.* v. *Gem State O. & P. Co.,* 38 Ida. 470; *Bonart* v. *Rabito,* 141 La. 970, 980; *Schmidt* v. *Pegg,* 172 Mich. 159; *Nickell* v. *Bradshaw,* 94 Ore. 580, 596–599.) The last two cases carefully distinguish clauses accelerating if the holder deems himself insecure.

" In *Nickell* v. *Bradshaw* (94 Ore. 580, 597), HARRIS, J., points out that ' The cases holding that an instrument is not negotiable if it contains a clause giving the holder the right to declare the debt due if he deems himself insecure are based primarily upon the objection that the date of maturity is placed wholly under the control of the holder is completely dependent upon his whim or caprice and is independent of any act done or omitted by the maker.' (*McCornick & Co.* v. *Gem,* 39 Ida. 470 accord.)

" The dictum in *Chelsea Exchange Bank* v. *Warner* (202 App. Div. 499, 503) and *Security Bank & Trust Co.* v. *Foster,* (Tex. Civ. App. 1923) 249 S. W. 227) are distinguishable, since these notes were demand, not time paper.

" The note in suit is non-negotiable." (*Old Colony Trust Co.* v. *Stumpel,* 126 Misc. 375, at p. 379.)

Could the conditional vendor, by simply physically separating the note from the conditional sale contract and thereupon transferring the agreement to one person and the note to the other, give

to the one his rights as conditional vendor to retake the property, or to foreclose the so-called conditional vendor's lien, or to sue for the balance of the purchase price; and at the same time give to the other the rights of a holder in due course of a negotiable instrument?

In the case at bar there was no loan; no pledging of security. The Liberty Credit Corporation, as purchaser, took over the conditional sale agreement with the accompanying installment note, endorsed by the payee without recourse, as a single transaction.

From a legal standpoint, the original transaction remained undisturbed. The relationship of conditional vendor and conditional vendee stood unchanged; and likewise the relationship between the conditional sale agreement and the appended note.

The only change resulting from the transfer was in the identity of one of the parties. The respective rights and remedies of the parties remained the same.

The plaintiff would now measure the respective rights and remedies of the parties to this action (the plaintiff's cause of action and the defendant's defenses) solely and exclusively by the terms of the note. Neither fact nor law can be rallied to the support of such a contention.

In fact, the execution of the note was only a part of the entire transaction.

In law the note constituted only a part of the entire agreement.

The attachment of one to the other created not merely a physical but a legal association as well.

" It is a familiar rule that several instruments made between the same parties at the same time and relating to the same subject matter are to be treated as one instrument " (*Marsh* v. *Dodge,* 66 N. Y. 533; *Draper* v. *Snow,* 20 N. Y. 331), " *and if one of the writings is a negotiable instrument, the same rule applies in an action between the parties to it or their representatives.*" (Italics mine.) (*Ewing* v. *Wightman,* 167 N. Y. 107, at p. 112; cited in *Kelso* v. *Ellis,* 224 id. 528, 535.)

In the precedent quoted the learned court insists on the propriety of such holding, on principles of common justice:

" A different construction would in many cases lead to the greatest injustice, and a purchaser might have *payment of the consideration money enforced upon him, and yet be disabled from procuring the property for which he paid it.* * * * These rules are firmly settled in our jurisprudence, and I think it follows as a necessary corollary from those rules that the law is the same where a promissory note is given for the purchase money on an executory contract for the sale of lands or chattels, as obtains in a case where

the only promise to pay is found in the contract of sale itself provided the action is between the original parties." (*Ewing* v. *Wightman, supra*.)

" The general rule regarding notes and bills of exchange is that contemporaneous agreements affecting such notes or bills must as between parties be read in connection with such instruments. (1 Daniel Neg. Inst. [6th ed.] §§ 79, 157.)

" Such agreements become binding also upon any succeeding holder or holders *who come into ownership with notice of the existence and terms of* such contemporaneous agreement." (*National Bank of Watervliet* v. *Martin*, 203 App. Div. 390.)

" It is admitted that the coupons are a part of and impressed with the same legal character as the bonds themselves, from which they were detached." (*Hibbs* v. *Brown*, 190 N. Y. 167, at p. 184.)

In passing it should be observed the case was tried and submitted for determination according to the laws of our State. But as the transaction occurred in the State of New Jersey, and the documents by their terms contemplated performance in that jurisdiction, the negotiability of the note should be adjudicated according to the laws of New Jersey. (*Beadall* v. *Moore*, 199 App. Div. 531.)

No proof of New Jersey statutes was submitted. But this ruling, I take it, would not make the negotiability of the note immune from attack.

My conclusions are as follows: The note, at its origin appended to the conditional sale contract, legally as well as physically constituted a part of the contract. Hence, in determining the negotiability of the note, as it then stood, the two instruments were to be considered and construed as a single document; and as the contract was non-negotiable so was the note.

Aside from the physical or legal attachment of the note to the contract, the language and provisions of the note, on its face, made the non-negotiable terms of the conditional sale contract, terms of the note, and destroyed its claim to negotiability. When the papers were signed, the transaction consisted of an executory contract for the conditional sale of an automobile, wherein the vendor agreed upon due compliance and full payment to transfer title to the vendee. The contract was not in aid of the note; the note was an incident to the contract. The contract was not pledged with the vendor as security for the vendee's note. But at the most the vendor's contract to transfer title was the consideration (not the collateral) for the vendee's promise and obligation to pay; and the cancellation of the contract left the note without consideration to support it.

Assuming the note to be a negotiable instrument, when the

Liberty Credit Corporation secured the conditional sale contract and the note, at one and the same time, as the assignee and indorsee respectively, it took the note subject to the existing defenses of the maker against the payee.

Therefore, the defendant is entitled to judgment dismissing the complaint on the merits.

Execution stayed for ten days after service of a copy of the judgment with notice of entry.